13180

NATIONAL LOAN & EXCHANGE BANK OF COLUMBIA
v. HOYT

(159 S. E., 365)

March, 1930.

*Messrs. Moorman & Moorman,* for appellant,

*Messrs. Paul A. Cooper* and *Heyward Brockinton,* for respondent,

June 16, 1931.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for recovery on a promissory note for $3,000.00, dated April 23, 1923, payable ninety days after date, given to The Liberty National Bank of Columbia (hereinafter referred to as the Liberty Bank) by the defendant, James A. Hoyt, the complaint alleging that the plaintiff, the National Loan & Exchange Bank of Columbia (hereinafter referred to as the Exchange Bank), "is now the owner and holder thereof."

The answer alleges that during the year 1921 defendant was a member of the Board of Directors of the Liberty Bank, but seldom attended the meetings of the board because he was a nonresident of the State; that in April, 1921, the president of the bank informed him that it had lost heavily by the defalcation of one of its employees, and that the various members of the board had each given to the bank a note for $3,000.00, and requested him to give the bank his note for that amount, assuring him that it would be held in the bank for the protection of the depositors, that he would never have to pay it, and that it would be an accommodation to the bank; that, upon the faith of these assurances, he gave the bank his note as requested, for which he received no consideration; that the note was renewed from time to time without payment of any interest or principal; that, prior to

the commencement of the suit, the depositors of the Liberty Bank were fully protected by the Exchange Bank for a valuable consideration; that the plaintiff took the note after its maturity, with full knowledge of the facts stated; and that, "the consideration upon which said note was given having been complied with, namely, the depositors having been fully protected, said note was at the time this suit was entered and is now void and of none effect and without consideration."

At the close of plaintiff's testimony, defendant made a motion for a nonsuit, which was refused. At the close of all the testimony, plaintiff and defendant each made a motion for a directed verdict. The trial Judge refused both motions and submitted the case to the jury, who found for the plaintiff. Defendant appeals.

There is little dispute as to the facts. The defendant testified that in April, 1921, he was notified by the president of the Liberty Bank that there had been a defalcation by one of the officers of the bank amounting to more than $125,-000.00, and that he was asked, in order to safeguard the depositors of the bank, to give his note for $3,000.00, on which no interest would be charged, and which would be carried for the benefit of the bank; that he gave such a note to the bank to protect the depositors, it being one of the "directors' notes," and that it was then his intention to pay the note if this should be necessary to accomplish such purpose; and that the note here sued on is a renewal of this note. He also conceded that the Liberty Bank was insolvent in 1923, and introduced in evidence an agreement dated October 23, 1923, between that bank and the Exchange Bank, whereby the former conveyed to the latter all its assets, and the latter guaranteed the payment of the amounts due to the former's depositors as such and its obligations for bills payable and rediscounts, the Exchange Bank to act as liquidating agent for the Liberty Bank, the contracting parties to have certain rights and liabilities not necessary to be considered here. The note in question passed to the Exchange

Bank under this agreement. On March 4, 1926, a receiver was appointed for the Liberty Bank, and on March 10, 1927, under order of the United States District Court, he conveyed to the Exchange Bank all the right, title, interest, and equity of redemption of the Liberty Bank and the receiver thereof in and to the remaining assets of the Liberty Bank, including any equity of redemption or rights of any kind that the latter bank or the receiver might have in any property assigned or conveyed to the Exchange Bank pursuant to the contract dated the 23d day of October, 1923, between the two banks, but excluding the assessments against the shareholders of the Liberty Bank, the purchase price of such assets to be credited on the indebtedness of the Liberty Bank to the Exchange Bank. Among the assets so conveyed was the note here in question. Assessments were duly made against the stockholders, and the defendant paid his assessment in full.

According to defendant's testimony, he executed the note and left it with the Liberty Bank for the protection of its depositors; by so doing he virtually created that bank his agent for handling the note for that purpose. The bank, being about to go upon the rocks and facing disaster to its depositors, secured, through the agreement already referred to, the complete protection of its depositors by transferring to the Exchange Bank all its assets, including defendant's note. The Exchange Bank carried out its obligation to the Liberty Bank by paying the latter's depositors in full. The Liberty Bank, on its part, used the note for the identical purpose for which the defendant gave it, and he cannot now be heard to complain. As stated by the trial Judge upon argument of defendant's motion for a new trial, a directed verdict should have been granted for the plaintiff.

Under the view which we take of the matter, it is unnecessary to consider all the exceptions *seriatim,* but none of them have been overlooked.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.

MR. JUSTICE COTHRAN (dissenting) : This is an action by the bank, as assignee of a note given by the defendant Hoyt, payable to the Liberty National Bank or order, dated April 23, 1923, due July 23, 1923, for $3,000.00, with interest from date at 8 per cent. per annum and 10 per cent. attorney's fees, subject to a credit of $34.81, January 31, 1925.

The action was instituted on May 11, 1925, by the National Loan & Exchange Bank (hereinafter referred to as the Exchange Bank), styling itself "as liquidating agent of the Liberty National Bank" (hereinafter referred to as the Liberty Bank).

By an order of his Honor Judge Shipp, the Exchange Bank was substituted as plaintiff for the Exchange Bank as liquidating agent of the Liberty Bank. The complaint as thus allowed to be amended is not set out in the record for appeal; it is assumed that it was in the usual form; the plaintiff in its own right, and not as liquidating agent, claiming the ownership of the note.

The gist of the defendant's answer is that on account of a serious loss by the bank through the defalcation of one of its employees, amounting to between $125,000.00 and $150,-000.00, he agreed to and did execute, in April, 1921, a note in the terms above stated, as an accommodation to the Liberty Bank and for the protection of its depositors; that the note sued upon is the last of many renewals of the original note dated in April, 1921; that it came into the hands of the Exchange Bank on November 23, 1923, several months after its maturity; that the Exchange Bank had full knowledge of the purpose for which the note was executed; that all of the depositors of the Liberty Bank had been protected by the Exchange Bank; and "that the consideration upon which said note was given having been complied with, namely, the depositors having been fully protected, said note

was at the time this suit was entered and is now void and of none effect and without consideration."

The case was tried before his Honor Judge Ramage and a jury at the Spring Term, 1930; the trial resulted in a verdict in favor of the plaintiff for $4,985.00, upon which judgment has been entered, from which the defendant has appealed upon exceptions which fairly present the questions hereinafter discussed.

The undisputed facts appear to be as follows:

The defendant in 1917 was and had been for some time a director in the Liberty Bank; and in the fall of that year he removed to Detroit, Mich., but appears to have retained his directorship; in January, 1921, he was re-elected, but did not qualify until some time in May thereafter; in April, 1921, the directors had a meeting at which it was disclosed that one of the employees of the bank was a defaulter to a large extent, some $125,000.00 to $150,000.00; at that meeting the defendant was not present; the finance committee reported that there was probably available from the assets of the defaulter and his family enough to reduce the shortage to $87,000.00; this they recommended be apportioned among the 29 directors, $3,000.00 each, which it was proposed should be loaned to the directors severally "on such paper as the Committee in its judgment considered safe."

The only evidence of notice to the defendant, Hoyt, of the action of the directors or other officers of the bank, comes from the defendant himself. He testified that he was notified by the president of the defalcation in April, 1921, "and to safeguard the depositors of the bank, I was asked to give this note, on which there would be no interest charge and which would be carried for the benefit of the bank."

In the absence of any opposing evidence, it may be assumed that this was the condition upon which Hoyt executed the original note; at any rate, it may certainly be affirmed that there was evidence to sustain his contention in this particular.

The Liberty Bank, bolstered by this action of the directors, continued in business through the balance of the year 1921. In January, 1922, a statement of the condition of the bank was made, and, while it shows very doubtful financial operations, assuming the correctness of the statement and the face value of the assets, the statement shows that the stock was worth 120 per share. It continued in business through the year 1922 and until October, 1923, when it could breathe no longer.

On October 23, 1923, an agreement was entered into between the Liberty Bank and the Exchange Bank by which the Liberty Bank conveyed to the Exchange Bank all of its assets, in consideration of which the Exchange Bank guaranteed the payment of the amounts due to the depositors of the Liberty Bank and its obligations upon bills payable and rediscounts. In pursuance of this agreement, the Exchange Bank took immediately charge of the Liberty Bank, including its place of business and all of its assets and fixtures, and proceeded to administer and liquidate the assets of the Liberty Bank.

It appears that the Exchange Bank took over, thereby, assets of the face value of $2,897,334.62, nearly $3,000,000-.00, and proceeded with such administration and liquidation, paying the depositors in full, whose deposits amounted to $1,071,042.13.

The Exchange Bank, on October 24, the day after the agreement was entered into, inserted the following advertisement in the *State* newspaper: "The National Loan & Exchange Bank announces the acquisition of the Liberty National Bank. We assure the depositors and friends of the Liberty National Bank a cordial welcome and absolute and full protection."

It does not appear that the defendant, Hoyt, was consulted in reference to any of these transactions, nor does it appear that the Exchange Bank has made any accounting of the

collections and disbursements made by it, except that it does appear that the depositors have all been paid.

After the Exchange Bank had been handling the matter for more than two years, apparently without accounting to any one, on March 4, 1926, Malcolm S. McConihe was appointed by the Comptroller of the Currency receiver of the Liberty Bank, upon the ground that it appeared to his satisfaction "from information on file in this bureau" that the Liberty Bank was insolvent.

It does not appear what the receiver did in reference to the assets of the Liberty Bank of which he was appointed receiver. It does appear that in April, 1927, he filed a petition in the Federal Court to be allowed to sell the "remaining" assets to the Exchange Bank, and obtained an order to that effect, accepting a proposition made by the Exchange Bank dated May 3, 1927. What that offer was does not appear. The order directed him to assign all of the remaining assets to the Exchange Bank in consideration of $103,326-.50. Whether that was paid to him or not, or what he did with it, does not appear. The order provides that it be credited upon the debt due by the Liberty Bank to the Exchange Bank, a singular provision when the order apparently contemplates the payment of that sum to the receiver as consideration for the transfer.

The complaint as amended does not appear in the record, and it is an open question whether the plaintiff is relying upon the assignment and delivery of the assets, including the Hoyt note, in pursuance of the agreement between the two banks of October 23, 1923, or upon the assignment by the federal receiver under the order of Judge Cochran of May 3, 1927. It becomes necessary, therefore, to consider the case from both angles.

Assuming that the Exchange Bank is relying upon the title obtained by virtue of the agreement of October .23, 1923, and of the indorsement of the Hoyt note by the cashier

of the Liberty Bank to it, dated January 31, 1925, the inquiry is pertinent whether by liquidating the claims of depositors of the Liberty Bank it acquired such a status as would entitle it to recourse against Hoyt upon his note. It seems to me that the only ground upon which such recourse could possibly be sustained is that by such liquidation the Exchange Bank was subrogated to the rights of the depositors whom it paid off, against Hoyt who had executed the note for the protection of the depositors.

In the case of *Dunn v. Chapman,* 149 S. C., 163, 146 S. E., 818, 820, the Court declared: "The principle of subrogation is discussed at length in the cases of *Prudential Co. v. Connor,* 120 S. C., 42, 112 S. E., 539; *Walker v. Queen Ins. Co.,* 136 S. C., 144, 134 S. E., 263, 52 A. L. R., 259; *Enterprise Bank v. Federal Land Bank,* 139 S. C., 397, 138 S. E., 146; see, also, *Sutton v. Sutton,* 26 S. C., 33, 1 S. E., 19; *Rivers v. Bank,* 135 S. C., 107, 133 S. E., 210; the authorities cited in those cases need not be repeated here. In the final precipitation of the matter it has been settled by these and other cases that the essential elements of the right of subrogation are: (1) That the party claiming it has paid the debt; (2) that he was not a volunteer, but had a direct interest in the discharge of the debt or lien; (3) that he was secondarily liable for the debt or for the discharge of the lien; (4) that no injustice will be done to the other party by the allowance of the equity."

When the Exchange Bank acquired the entire assets of the Liberty Bank, with its line of depositors, in consideration of its assumption of all of the obligations of the Liberty Bank, including the claims of depositors, the Exchange Bank became the primary and not the secondary debtor, and all that it paid to the depositors was in fulfillment of its contract obligations, voluntarily assumed by it, for what in reason it considered the acquisition of valuable property and good will with the hope and expectation of working out an

annihilation of the debts, including that of its own upon the Liberty Bank. At that time the Exchange Bank was under no obligation to any creditor of the Liberty Bank; the agreement was a voluntary act on its part, perhaps, as events have shown, an improvident venture for it, but none the less voluntarily entered upon.

In 2 Story, Eq. Jur. (14th Ed.) § 707, it is said: "Subrogation is the equity by which a person who is secondarily liable for a debt, and has paid the same, is put in the place of the creditor, so as to entitle him to make use of all of the securities and remedies possessed by the creditor in order to enforce the right of exoneration as against the principal debtor in the same rank with himself. To entitle a party to subrogation, his equity must be strong and his case clear. It is an equity called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities which the creditor may hold against the principal debtor, and by the use of which the party paying may be made whole. * * * There can be no right of subrogation in one whose duty it is to pay, or in one claiming under him, against one who is secondarily liable or one not liable at all. In such a case payment is extinguishment."

In 1 Jones, Mtg. (6th Ed.) § 876, it is said: "The test of the right of subrogation is found in answer to the inquiry whether the person who paid the mortgage debt is the one whose duty it was to pay it first of all; if the debt was not primarily his, and he only occupied the position of a surety to the mortgagor, he is entitled to be subrogated to the position of the mortgagee when he has paid the debt; but, if the debt is the debt of the person who paid it or is a debt which he has covenanted to pay, his payment of it raises no right of subrogation, but is simply a performance of his own obligation or covenant."

In *Breedin v. Smith*, 126 S. C., 346, 120 S. E., 64, 70, the Court said: "Subrogation is not allowed in favor of one

who pays a debt in performance of his own covenants"—citing 37 Cyc., 374; *McLure v. Melton*, 34 S. C., 377, 13 S. E., 615, 13 L. R. A., 723, 27 Am. St. Rep., 820.

In 37 Cyc., 374, cited in *Breedin v. Smith, supra,* it is said: "Subrogation is allowed only in favor of one who under some duty or compulsion, legal or moral, pays the debt of another, and not in favor of him who pays a debt in performance of his own covenant for the right of subrogation never follows an actual primary liability, and there can be no right to subrogation in one whose duty it is to pay."

See, also, to the same effect, *Rogers v. Meyers,* 68 Ill., 92; *Paton v. Robinson,* 81 Conn., 547, 71 A., 730; *Loewenstein v. Insurance Co.,* 227 Mo., 100, 127 S. W., 72; *Lackawanna Trust & Safe Dep. Co. v. Gomeringer,* 236 Pa., 179, 84 A., 757; *Dill v. Voss,* 94 Ind., 590; *Brown v. Bank,* 139 Iowa, 83, 117 N. W., 289; 3 Pom. Eq. Jur., § 1419.

That there can be no subrogation in favor of a volunteer is decided in the case of *Standard Oil Co. v. Powell Paving & Contracting Co.,* 139 S. C., 411, at page 426, 138 S. E., 184.

That the Exchange Bank became the primary debtor upon its acquisition of the assets of the Liberty Bank and its engagement to discharge the claims of the depositors is shown by the manifest fact that it might have been originally sued by any depositor of the Liberty Bank upon such engagement, in the event of a breach thereof, or by the Liberty Bank thereupon. In other words, by such agreement the positions of the two banks were reversed, the Exchange Bank becoming the principal and the Liberty Bank the surety —a relation which the depositors were not forced to accept, but which as between the banks had to be recognized.

Considering next the reliance of the Exchange Bank upon the assignment of the assets of the Liberty Bank, including the Hoyt note: In this reliance the Exchange Bank cuts loose entirely from the agreement of October 23, 1923, and accepts only what the federal receiver had the right to assign,

which, as regards the Hoyt note, was the title thereto charged with the equity of Hoyt that it should be used only for the protection of the depositors of the Liberty Bank; the note having been assigned after its maturity. This assignment took place in May, 1927, in pursuance of the order of the Federal Court, long after the Exchange Bank had assumed the deposit accounts of the Liberty Bank and had settled for them in cash. In this view of the case there is, of course, no room for a claim of subrogation by the Exchange Bank; it took only what the receiver could assign.

I do not think that there can be a question as to reversible error in allowing the minutes of April 30, 1921, to be admitted in evidence. It was manifestly done to rebut the testimony of Hoyt as to the condition of his execution of the note, the protection of the depositors of the bank. It tended to show that the other directors had imposed no such condition upon the notes executed by them, and inferentially put Hoyt in the same boat with them. He was not present at the meeting, and nothing said or done there was admissible to bind him; so far as he was concerned, it was *res inter alios acta*.

I think, therefore, that the defendant's motion for a directed verdict should have been granted; at the least that a new trial should be ordered.