14147

BETHEA v. FLOYD

(181 S. E., 721)

522

Messrs. *W. C. Moore* and *Joe P. Lane,* for appellant,

Messrs. *Gibson & Muller,* for respondent,

October 17, 1935.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, by John C. Bethea, as liquidating agent for the Bank of Dillon, as plaintiff against W. Floyd, defendant, instituted in the Court of Common Pleas for Dillon County, is a suit to recover judgment against the defendant for the sum of $792.65, with interest thereon from February 1, 1928, at the rate of 8 per cent. per annum, alleged to be the balance owing on a certain note dated January 13, 1928, executed and delivered unto the First National Bank of Dillon, for the sum of $1,000.00, payable on or before February 1, 1928, negotiable and payable at the First National Bank of Dillon. From the record in the case it appears that, prior to the commencement of this suit, there were in operation in the Town of Dillont, said county and State, three banks, the Bank of Dillon, the First National Bank of Dillon, and the Peoples Bank of Dillon, and in this connection we quote the following from the allegations of the complaint:

"3. That during the early part of the year 1928, the said First National Bank of Dillon was with the other two banks in Dillon merged and The Bank of Dillon became by such merger and transfer the owner of the said note, it having been duly transferred by The First National Bank of Dillon to the said The Bank of Dillon and this plaintiff as Liquidating Agent of The Bank of Dillon is now the legal owner and holder thereof.

"4. That no part of said note has been paid save and except Two Hundred Seven and 35/100 ($207.35) Dollars which was a deposit on hand to the credit of the said W. Floyd at the time The Bank of Dillon closed, which said deposit in pursuance to the legal rights of the said bank was credited upon said note, leaving due a balance thereon of Seven Hundred Ninety-two and 65/100 ($792.65) Dollars, with interest thereon, etc.    *    *    *"

In answering the complaint the defendant admitted the execution of the note referred to, payable to the First National Bank of Dillon, in the sum of $1,000.00, but denied the remaining allegations of the complaint. Further, answering the complaint, the defendant made the following allegations:

"1. That up to and prior to the 13th day of Jan., 1928, and for a short time subsequent thereto, this defendant was a member of the Board of Directors of The First National Bank of Dillon, then a national banking association under the laws of the United States of America. That just prior to said date the executive officers of this bank had been advised by the Comptroller of the Treasury of the United States that as a result of certain doubtful or questionable notes then being carried by said bank, its capital stock had in the opinion of the Comptroller been impaired to the extent of approximately Eight Thousand ($8,000.00) Dollars and the bank was requested to repair the same. That this request was communicated to the individual members of the Board of Directors of the bank by its president. At the same time negotiations were being had between the officers and directors of The Bank of Dillon, The Peoples Bank of Dillon, and The First National Bank of Dillon for the purpose of bringing about a merger or consolidation of these three banks, either by the absorption or purchase by one of the banks of the two remaining ones, or otherwise, and at the time it was confidently believed that such result would be consummated within a very short time. In these circumstances the president of The First National Bank of Dillon proposed to this defendant along with seven of his associates on the Board of Directors that in order to comply with the request of the Comptroller of the Treasury, the said eight members of the Board of Directors execute their individual notes in the sum of One Thousand ($1,000.00) Dollars each, payable to the order of The First National Bank, which notes would be placed temporarily in the assets of the bank to be there so held until the pending negotiations should be

completed. That it was specifically understood and agreed that immediately upon the completion of the proposed plans for merger, consolidation, or purchase the said notes would be cancelled and. surrendered to the makers and that they would not be binding or legal obligations upon the part of the makers under any circumstances whatsoever. That with this understanding ·and without any consideration whatsoever this defendant executed the said note. At the same time the seven other members of said board executed similar notes upon the same understanding and agreement.

"2. That soon thereafter the pending plan for the consolidation, merger, or purchase of the said First National Bank with or by the other banks was completed under an arrangement by which The Bank of Dillon took over The First National Bank of Dillon and The Peoples Bank of Dillon and a committee was appointed by the Boards of Directors of the three banks to appraise and value the assets of The First National Bank. That at the time of this transaction the officers of The Bank of Dillon were fully advised as to all the circumstances under which this note and the similar notes of the other directors had been executed and the said The Bank of Dillon took over the assets of The First National Bank of Dillon with full knowledge of the fact that the said note was given without consideration and that same was not a binding obligation on this defendant and the said The Bank of Dillon at the time expressly assented to this understanding and agreement. That the committee appointed by the said bank and representing The Bank of Dillon for the purpose of appraising and putting a valuation on the assets of The First National Bank at the time same was purchased or absorbed by The Bank of Dillon was fully advised and informed as to the status of this note and the circumstances and understanding under which it had been executed and said committee did not include such note in the assets of The First National Bank of Dillon, but on the other hand same was put aside as void and worthless and the act of said committee in so doing was known to, ratified by and

assented to by the said The Bank of Dillon. That in fact the president of The Bank of Dillon was a member of said appraisal committee and took part in such disposition of said note.

"3. That defendant further alleges that the plaintiff wrongfully credited the amount of defendant's deposits in The Bank of Dillon on the alleged note set out in the complaint. That therefore the said note is void and he is entitled to have same canceled and surrendered to him and to have his deposit of Two Hundred Seven and 35/100 restored on the books of said bank."

For the reasons set forth in the foregoing allegations, contained in the defendant's answer, the defendant asked that the complaint be dismissed. The plaintiff filed a reply to the counterclaim set up by the defendant denying generally the allegations thereof.

Issues being joined, the case was tried in the said Court at the October, 1933, term, before his Honor, Judge H. F. Rice, and a jury, resulting in a verdict for the plaintiff, directed by the trial Judge, for the full amount sued for.

From judgment entered on the verdict, the defendant has appealed to this Court, alleging that the trial Judge erred in directing a verdict for the plaintiff on the said note in the following respects:

"(a) The testimony shows that the note was given without any consideration and with the definite understanding between the maker and payee that in the event the First National Bank of Dillon, the payee, should be merged with or consolidated with the other banks of the Town of Dillon by merger, consolidation, purchase, or otherwise, negotiations for which were then pending, then and in that event the said note would be void and the defendant would not be called upon to pay same; all of which facts and circumstances were communicated to The Bank of Dillon and its officers and agents at the time of the alleged consolidation, and prior to the transfer of said note by endorsement thereon.

"(b) The record shows that The Bank of Dillon acquired said note subject to all of the conditions and provisions of the agreement entered into between the defendant as maker and First National Bank of Dillon as payee, and that the said Bank of Dillon agreed to and acquiesced in such conditions and provisions.

"(c) That the testimony shows that the said note was not transferred to The Bank of Dillon by endorsement on the back thereof until after its maturity and that therefore the said The Bank of Dillon never became a purchaser of said note in due course.

"(d) The Presiding Judge erroneously held that the deed or conveyance purporting to convey all of the assets of The First National Bank of Dillon to The Bank of Dillon constituted the said Bank of Dillon the owner and holder in due course of the note set out in the Complaint; whereas he should have held that such deed or conveyance at most, only transferred the said note to The Bank of Dillon subject to all conditions and provisions of the agreement entered into by the defendant as maker with the payee at the time of its execution, and under said conveyance The Bank of Dillon acquired no higher rights than the First National Bank and took the same.

"(e) That the testimony shows that the conditions, provisions and contingencies, upon the happening of which the note was to become void, to-wit: the merger or consolidation of The First National Bank with The Bank of Dillon and Peoples Bank or the purchase thereof by The Bank of Dillon did take place and the note, being without consideration, thereby became void."

The exceptions will not be considered separately but as a whole, and in our reference to the facts developed on the trial of the case we shall call attention only to those facts we consider pertinent to the appeal.

At the conclusion of the introduction of the testimony, both parties, plaintiff and defendant, asked for a directed

verdict. The plaintiff's motion was based upon the following grounds:

"1. According to that conveyance offered in evidence, the legal title to the notes and choses in action were transferred to The Bank of Dillon and merged into it, and it stands in the shoes of The First National Bank; and since, under the competent evidence in the case, The First National Bank could recover, the liquidating agent has that right.

"2. The directors of The First National Bank having given their notes to repair the impaired capital stock of the bank are estopped to deny the validity thereof, and that it was without consideration.

"3. That the president of The First National Bank had no authority to bind the bank by agreeing with the directors to return the notes to them.

"4. I think there is another ground and I will state it but will not insist upon it. It is this: That the contract having been entered into to convey all of the assets of The First National Bank to The Bank of Dillon, the endorsement on the back of the note would speak as of that time, no matter when it was actually endorsed on it. I am somewhat doubtful about that and will not argue it, but under the first three grounds I am confident and believe I am entitled to a directed verdict."

The defendant's motion for a directed verdict was based on the ground: "That the undisputed evidence is that these notes were made without any consideration, and made, in addition to the lack of consideration, on the further infirmity that there was a contract made between the parties, that the notes, upon the happening of a contingency—which did happen, that The Bank of Dillon, or The First National Bank, rather, should consolidate with the other banks— that these notes were to be returned. That The Bank of Dillon admittedly had notice of that agreement, the lack of consideration, and, therefore, as a matter of law these parties are entitled to the return of the notes."

At the conclusion of the argument of counsel for the motions stated, the trial Judge, his Honor, Judge Rice, asked this question: "You think this is a question for the Court to decide?" In answer to this question counsel for plaintiff stated, in effect, that he thought there was nothing for the jury to decide. Counsel for the defendant made this answer: "I move for a directed verdict on the grounds which I stated to the stenographer. I take the view that the evidence clearly shows that The Bank of Dillon took these notes with knowledge and with notice of their circumstances; that it was not a holder in due course. I say if there is any dispute about these facts, it is a question for the jury, but I take the view that there is no dispute about it"; adding this qualification: I am frank to say there may be scintilla of evidence to go to the jury on the question of holder in due course."

In our opinion, counsel for the plaintiff properly contended that there was nothing for the jury to decide; and counsel for the defendant practically conceded this when he made a motion for a directed verdict. The only qualification he made was in this form: "I am frank to say there may be a scintilla of evidence to go to the jury on the question of holder in due course." Saying that there "may be a *scintilla* of evidence" to go to the jury on the question of holder in due course is certainly a very weak contention. "Scintilla" means, according to 56 C. J., 863, "a gleam," "a glimmer," "a spark," "the least particle," "the smallest trace." Under our view, counsel for the defendant practically admitted that there was no question to be submitted to the jury, and, we may add, it became the duty of the trial Judge to pass upon the issue and not send it to the jury.

The evidence in the case shows that, as set forth in the pleadings, prior to January 1, 1928, there were three banks in the Town of Dillon—the Bank of Dillon, the First National Bank, and the Peoples Bank. Mr. Frank David was the active vice-president of the Peoples Bank, Mr. W. S. Rogers was president of the First National Bank, and the managing officer of the Bank of Dillon was

Mr. John C. Bethea. The First National Bank was, of course, under the control of the comptroller of the currency. It appears from the testimony that the comptroller notified the officers of the First National Bank that, as result of certain questionable paper which the bank, at that time, was carrying in its assets, its capital stock had become impaired in the net sum of $8,000.00, and the officers of that bank were required by the comptroller to take immediate steps to restore this impairment. Prior to that time those interested in that bank had paid into the said bank, under requirement of the comptroller, an assessment of $30,000.00 which was made upon the stockholders of the bank, and the requirement to raise the sum of $8,000.00 was a second call the comptroller made upon that bank, that is, the First National Bank, to take steps to put the bank in proper shape. In order to comply with this second call by the comptroller of the currency, the directors, consisting of eight in number, of the First National Bank of Dillon, held a meeting and each executed a note in the sum of $1,000.00. This made the amount which the comptroller of the currency had called for. The said notes were dated January 13, 1928, and were made payable to the said bank, the First National Bank of Dillon, February 1, 1928, and were regularly entered upon the books of that bank as assets of the same, and the comptroller of the currency notified. It further appears from the evidence in the case that the managing officers of the three banks, above mentioned, that is, the Bank of Dillon, the Peoples Bank, and the First National Bank, after having discussed the question, agreed that, in order to get their matters in proper shape, the stockholders of these institutions should be called upon, and in consequence of the call made upon the stockholders of the several institutions about 95 per cent. of the stockholders of each of the said institutions entered into an agreement, in writing, that the three institutions referred to should merge and consolidate upon such terms and under such conditions as the directors of the said three institutions might agree upon. Thereafter,

on January 17, 1928, four days after the execution of the said notes by the directors of the said First National Bank, the directors of the three said institutions, the Bank of Dillon, the First National Bank, and the Peoples Bank, entered into an agreement to consolidate the same, to be known as the Bank of Dillon. This consolidation took place January 21, 1928. According to said agreement, the assets of the said First National Bank, including the note in question in this suit, were turned over to the said Bank of Dillon. In this connection we call attention to the fact that this transfer of the assets of the said First National Bank was made in accordance with the authority given by the stockholders of said bank to the officers in charge thereof, and a deed was executed to that effect. When the directors, including the defendant herein, of the First National Bank, executed and delivered to the said bank their notes for the purpose of repairing the impaired condition of the said bank, and the said notes were duly entered as assets upon the record of the said bank, and the Comptroller of the Currency notified of this action, the said notes became the property of the said First National Bank, and the managing officers of said bank had the right to transfer the same, and any agreement made between the president of that bank and the makers of said notes, including the note in question in this suit, that the said notes should not be binding in case the bank should afterwards merge its assets with the other banks of that town, was void. Therefore, the testimony offered by the defendant to the effect that the president of the First National Bank made such a promise to the maker of the note in question was incompetent. In this connection we call attention to the case of *Carolina National Bank v. Wilson et al.,* 153 S. C., 251, 150 S. E., 765, and authorities therein cited. The record discloses that by the deed of conveyance above referred to, the First National Bank, by its officer in charge, conveyed all of the assets of the said bank to the Bank of Dillon, and this officer, by virtue of the power given him, had the authority to execute the deed. This

deed conveyed all of the assets. No exception was made as to the note in question. We, therefore, think that Judge Rice was correct in holding that the note in question legally became the property of the Bank of Dillon, and the liquidating agent for the Bank of Dillon can maintain this action to recover the amount owing on the said note. So far as the record discloses, no contention on the part of the managing officer of the said First National Bank was made known to the officers of the consolidated institution until after the consolidation and the execution and delivery of the deed transferring the assets of the First National Bank to the Bank of Dillon, the consolidated institution. After said consolidation and transfer were made, when those in charge of the appraisement of the assets were ascertaining the value of the papers of the three institutions that had combined their assets, the contention was made by Mr. Rogers that an agreement was entered into between the president of the said First National Bank and the directors of the said First National Bank, that the said notes should not be collected in the event the consolidation referred to was affected. At that time the president of the said First National Bank strenuously contended that the note involved in this suit and the other notes executed by the said directors of the First National Bank should be canceled and returned to the makers of said notes for the reason of the agreement between himself and the said directors of the First National Bank, and he consistently maintained that position both before and during the trial of this case in the lower Court. In this connection we may state that there was abundant testimony adduced at the trial to the effect that there was such an agreement between the president of the First National Bank and the maker of the note in question. But, as stated, no exception was made in the deed mentioned above to that effect, and the record is clear that no one brought home to the other two banks notice or any suggestion of these facts until after the merger was formed. In our opinion, under

the law recognized in this State, the said note became the property of the said Bank of Dillon, and the liquidating agent has a right to recover on the note for the balance owing thereon. We consider it unnecessary to discuss the law bearing on the question, because the law on this question is too well known. We deem it sufficient to simply call attention to the discussion of this question by this Court in the case of *Carolina National Bank v. Wilson, supra,* and authorities therein mentioned. In this connection, we also call attention to the case of *National Loan & Exchange Bank v. Hoyt,* 160 S. C., 520, 159 S. E., 365.

As to the contention that there was no consideration for the note in question, and the notes by the other directors of the said First National Bank, we may state that the execution and delivery of these notes to the First National Bank for the purpose of repairing the impaired condition of the First National Bank, in which the makers of these notes were interested as officers, was a good consideration. We may also state, in this connection, that the merging of these institutions and the transfer of the assets thereof was done for the mutual benefit of the said institutions, and that constituted a sufficient consideration for the transfer of the said assets to the said Bank of Dillon. As stated, for the reasons above set forth, the Bank of Dillon came into rightful possession of the note involved in this suit and the officers in charge of that bank had no power to waive any right possessed by that bank to collect on said note. The institution of this action by the plaintiff is consistent with his duties as such liquidating agent. As to the contention of the appellant, that the indorsement of the First National Bank on the said note was not made until after the note became due, we consider it sufficient to call attention to the fact that the Bank of Dillon came into rightful possession of the note, as the owner thereof, before maturity. The agreement and contract to convey all of the assets of the First National Bank to the Bank of Dillon was

entered into on the 17th of January, 1928, and the deed in question was made on the 21st of January, 1928, which was some time before the maturity date, and the Bank of Dillon came into rightful possession of the note at that time, as the owner thereof. Under the facts and circumstances of the case it was not necessary for the indorsement to be made on the said note, and when the indorsement was made the same took effect as of the date of the said deed and contract to transfer or deliver.

In passing upon the issues raised by the appeal in this case, we have not discussed herein every position presented by appellant, but we have considered the same, and after due consideration of the entire record it is our opinion that the trial Judge reached the proper conclusion in the case.

It is therefore the judgment of this Court that the exceptions be and are hereby overruled and the judgment of the lower Court affirmed.

Mr. Chief Justice Stabler, Mr. Justice Bonham and Messrs. Acting Associate Justices E. C. Dennis and C. J. Ramage concur.