HILL, J.:
**348 Linda Gibson and several of her companies-Heritage Seven, LLC, Seven Oaks Apartments, LLC, and 3205 Palm Boulevard, LLC (collectively, Gibson)-appeal the circuit court order granting summary judgment to Andrew Epting, Jr., George J. Kefalos, Gedney M. Howe, III, John S. West, and their respective law firms (collectively, Respondents). We affirm.
I.
In 2007, Gibson retained a ReMax real estate broker to assist her in the purchase and management of an apartment complex. In 2008, she sued ReMax Professional Realty and the broker, alleging they committed various wrongs and torts related to the management. In late 2009, Gibson defaulted on a loan with Ameris Bank (Ameris), which was secured by a mortgage on several properties she owned, including the complex. When it appeared Gibson might have a lender liability claim against Ameris, her lawyer in the ReMax case withdrew due to a conflict of interest. Gibson then retained lawyer Robert L. Papa, who advised her she was not a candidate for bankruptcy and tried, unsuccessfully, to negotiate with Ameris. Papa approached Kefalos about representing Gibson on her issues with Ameris. Kefalos expressed interest **349 in taking the case but asked that Epting also be brought on. After Gibson and Papa met with Kefalos and Epting, Papa advised them that Gibson wished to retain Kefalos to represent her in the ReMax case and Epting to represent her in negotiations with Ameris. Correspondence and discussions ensued between Epting and Papa concerning the fee structure. Epting emphasized Gibson might benefit from a contingency fee rather than an hourly rate given her financial stress, particularly if Ameris began a "protracted battle with no result certain" by suing for foreclosure. In April 2010, Gibson signed a contingency fee agreement that referenced a February 4 email she claims she did not receive or see.
On June 14, 2010, Ameris sued Gibson, alleging she owed $2,796,466.75 plus interest on the loan and seeking foreclosure of the mortgage as well as a deficiency judgment. On July 9, 2010, Epting emailed Gibson asking permission to associate Howe and West for no additional fee. Epting also filed an answer and counterclaim on Gibson's behalf.
Ameris sold the note on the apartment complex to Galt Valley, LLC, which was substituted for Ameris as the plaintiff in the foreclosure action. Ameris remained the defendant on Gibson's counterclaims. Galt Valley's counsel began negotiations with Epting and moved for appointment of a receiver. Respondents opposed the motion, and the Master-in-Equity later denied it after a hearing. Continuing to press for foreclosure, Galt Valley sent Epting a settlement offer, noting Gibson's potential exposure to a $1,697,678.10 deficiency judgment and offering to resolve the case by having Gibson deed them the collateral properties and sign a $1.5 million *180 note. Epting rejected the offer on Gibson's behalf.
Respondents asked Gibson to consult an independent lawyer to advise her on their calculation of the proposed fee, as well as the prospect of securing the fee by granting Respondents a mortgage on other property Gibson owned. Gibson chose Paul Tecklenburg, who had represented her and her family in the past, to review Respondents' proposals. On November 8, 2010, Galt Valley offered to accept the deeds to the collateral properties in lieu of foreclosure, waive any deficiency, and allow Gibson to retain her counterclaims against Ameris. Tecklenburg testified he knew the Galt Valley offer had either **350 been made or was imminent, and he negotiated with Respondents to reduce the calculated fee from over $700,000 to $566,666.66. Tecklenburg then drafted the fee agreement that all parties signed on November 18, 2010, in which Gibson agreed to pay Respondents "[o]ne-third (1/3) of all sums saved from the deficiency amount claimed by Ameris, in the amount of $1,700,000."
Gibson later settled the ReMax matter for $850,000, and she paid the costs of the foreclosure case and the $566,666.66 attorneys' fee out of these funds. Epting and Kefalos also tried Gibson's counterclaims against Ameris, receiving a judgment of over $2.9 million dollars. After Ameris appealed, Gibson engaged different counsel. This court reversed the judgment. See Gibson v. Ameris Bank , 420 S.C. 536, 538, 804 S.E.2d 276, 277 (Ct. App. 2017), cert. denied , S.C. Sup. Ct. Order dated Feb. 1, 2018.
On July 30, 2013, Gibson brought this action against Respondents over the attorneys' fee in the foreclosure case. As amended, her complaint included causes of action for inter alia legal malpractice, breach of fiduciary duty, conversion, violation of the South Carolina Unfair Trade Practices Act (SCUTPA), fraud, rescission, and negligent misrepresentation. After a hearing, the circuit court granted Respondents summary judgment, which Gibson now asks us to overturn.
II.
We review grants of summary judgment using the same yardstick as the trial court. Woodson v. DLI Props., LLC , 406 S.C. 517, 528, 753 S.E.2d 428, 434 (2014). We view the facts in the light most favorable to Gibson, the non-moving party, and draw all reasonable inferences in her favor. NationsBank v. Scott Farm , 320 S.C. 299, 303, 465 S.E.2d 98, 100 (Ct. App. 1995). Respondents are entitled to summary judgment only if "there is no genuine issue as to any material fact ...." Rule 56(c), SCRCP. Summary judgment is a drastic remedy to be invoked cautiously and must be denied if Gibson demonstrates a scintilla of evidence in support of her claims. Hancock v. Mid-South Mgmt. Co. , 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).
**351 i. Ambiguity of the November 18, 2010 Fee Agreement
Gibson claims the November 18, 2010 fee agreement is ambiguous, emphasizing her appeal "focuses on the circuit court's errors in resolving-in favor of the Lawyers who drafted the fee documents-disputed questions of fact concerning the terms of the fee agreement." Of course, we now know Tecklenburg wrote the fee agreement, not Respondents. We also know Gibson and her two experts framed their arguments on a mirage: that Gibson was unaware of Galt Valley's settlement offer to waive the deficiency when she signed the November 18 fee agreement. Gibson was aware.
Gibson's next point is set on another phantom foundation: that the November 18 agreement was ambiguous because Respondents interpreted it as creating a dual contingency fee, entitling them to not only one-third of the $1.7 million savings in the foreclosure action but also a percentage of whatever Gibson collected on the counterclaims against Ameris. If this appeal concerned whether the November 18 agreement created a dual contingency fee, we might agree with Gibson that ambiguity exists because the Agreement can be read as limiting the fee for both the "defense of and pursuit of a counterclaim in a foreclosure action brought by Ameris Bank ..." to one-third of the deficiency amount saved. The material facts in this case, however, are confined to what the parties agreed to regarding the fee for defending the foreclosure action. Whether the Agreement created *181 a dual contingency fee is immaterial to our inquiry.
Even if relevant, any issue concerning whether the alleged dual contingency fee rendered the November 18 agreement ambiguous is now moot. When the November 18 agreement was signed, Gibson's contingency fee obligation on the counterclaims was hypothetical. When this court reversed that judgment, any issue that the November 18 fee agreement created or supplemented a contingency fee obligation to Respondents for their work trying the counterclaims became moot, as her recovery became zero. See W. Shakespeare, King Lear act I, sc. l ("Nothing will come of nothing.").
Ambiguity of a contract is a question of law, which we review de novo.
**352 Callawassie Island Members Club, Inc. v. Dennis , Op. No. 27835, 425 S.C. 193, 821 S.E.2d 667, 2018 WL 5984108 (S.C. Sup. Ct. filed Nov. 14, 2018) (Shearouse Adv. Sh. No. 45 at 13-14 ). The essential terms of the November agreement are plain and straightforward, and we discern no ambiguity in the language used to calculate the fee. Because the issue of whether the alleged dual contingency fee rendered the November 18 agreement ambiguous is irrelevant and moot, there is no escaping the conclusion that Gibson agreed to pay a one-third contingency fee to Respondents based on the $1.7 million amount saved on the deficiency claim against her. The language is not susceptible to any other rational interpretation.
Gibson claims she was confused by the terms and did not understand the concept of a reverse contingency fee. This creates no genuine issue of material fact because one who has signed a contract is presumed to have read, understood, and assented to its terms. See Wachovia Bank Nat'l Ass'n v. Blackburn , 407 S.C. 321, 333, 755 S.E.2d 437, 443 (2014) ; Burwell v. S.C. Nat'l Bank , 288 S.C. 34, 39-40, 340 S.E.2d 786, 789-90 (1986). And unambiguous terms of a written contract may not be altered by parol evidence. McGill v. Moore , 381 S.C. 179, 188, 672 S.E.2d 571, 576 (2009) ("Where a written instrument is unambiguous, parol evidence is inadmissible to ascertain the true intent and meaning of the parties.").
Gibson has a host of other reasons she believes the fee agreement was unclear, but they all hinge on either the existence of a dual contingency fee, parol evidence, or allegations concerning events occurring after the date of the contract. None of these reasons concern facts that are material in the sense intended by Rule 56, SCRCP. See Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Only disputes over facts that might affect the outcome of the suit ... will properly preclude the entry of summary judgment.").
The summary judgment standard governing Gibson's claims requires her to produce only a "scintilla" of evidence to avoid judgment as a matter of law, but a scintilla is a perceptible amount. There still must be a verifiable spark, not something conjured by shadows. Bethea v. Floyd , 177 S.C. 521, 529, 181 S.E. 721, 724 (1935) (" 'Scintilla' means, according to 56 C. J. 863, 'a gleam,' 'a glimmer,' 'a spark,' 'the least particle,' 'the **353 smallest trace.' "); Crosby v. Seaboard Air Line Ry. , 81 S.C. 24, 31-32, 61 S.E. 1064, 1067 (1908) ("[A] scintilla of evidence is any material evidence which, taken as true, would tend to establish the issue in the mind of a reasonable juror."); Scintilla , The Oxford English Dictionary (2nd ed. 2018) ("A spark ... a minute particle, an atom."); see Russell v. Wachovia Bank, N.A. , 353 S.C. 208, 220, 578 S.E.2d 329, 335 (2003) ("When opposing a summary judgment motion, the nonmoving party must do more than 'simply show that there is a metaphysical doubt as to the material facts but must come forward with specific facts showing that there is a genuine issue for trial.' " (citations omitted) ); Grimsley v. S.C. Law Enf't Div. , 415 S.C. 33, 42, 780 S.E.2d 897, 901 (2015) (affirming trial court's grant of summary judgment and noting court of appeals improperly "cherry-picked" an isolated portion of the record, placed it out of context, and "elevated what is, at best, a metaphysical doubt into a genuine issue of material fact"); Main v. Corley , 281 S.C. 525, 527, 316 S.E.2d 406, 407 (1984) ("The judge is not required to single out some one morsel of evidence and attach to it great significance *182 when patently the evidence is introduced solely in a vain attempt to create an issue of fact that is not genuine."); Beale v. Hardy , 769 F.2d 213, 214 (4th Cir.1985) (explaining that party opposing summary judgment "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another").
ii. Breach of Fiduciary Duty and Legal Malpractice
Gibson asserts Respondents breached their fiduciary duty to her in numerous ways, all of which duplicate her legal malpractice claim because the duties arose out of the attorney-client relationship and she alleges the same facts as to both claims. See RFT Mgmt. Co. v. Tinsley & Adams L.L.P. , 399 S.C. 322, 336-37, 732 S.E.2d 166, 173 (2012) (providing when breach of fiduciary duty and legal malpractice claims both arise out of the duties inherent to the attorney-client relationship and the same factual allegations, the claim for breach of fiduciary duty is duplicative of and encompassed by the claim for legal malpractice). Accordingly, we only address Gibson's claim for legal malpractice.
**354 Gibson primarily contends Respondents committed legal malpractice by charging an unreasonable and excessive fee and failing to ensure the presentation, content and execution of the fee agreement conformed to ethical rules. She bases this claim on the affidavits of her two expert witnesses, which rely on standards established by the South Carolina Rules of Professional Conduct (SCRPC). The SCRPC can be relevant in assessing the legal duty of an attorney in a malpractice action, but neither our supreme court nor this court has ever held a violation of the SCRPC in itself constitutes legal malpractice. See Spence v. Wingate , 395 S.C. 148, 161, 716 S.E.2d 920, 927 (2011) ("[T]he Rules of Professional Conduct do not, in themselves, create a cause of action or establish evidence of negligence per se .... A review of the Scope of Rule 407, SCACR clearly indicates that the rules are intended for guidance and disciplinary purposes, not to form the basis for civil litigation."). The SCRPC provide criteria for disciplining members of the bar for ethical transgressions. This discipline occurs under the control of our supreme court and is therefore a public regulatory check. The ethical rules were not designed to be weaponized for the use of private litigants. See Rule 407 Scope [7], SCACR ("Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. ... [The Rules] are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule."). We therefore affirm the grant of summary judgment as to Gibson's malpractice claim based on Respondents' failure to conform to the SCRPC.
For the same reasons, we affirm summary judgment as to the malpractice claim for allegedly excessive fees. Charging an unreasonable fee may expose a lawyer to discipline, but it does not equate to legal malpractice. See 1 Ronald E. Mallen, Legal Malpractice § 1.2 (2018 ed.) ("The test to distinguish malpractice from other wrongs is whether the claim primarily concerns **355 the quality of the legal services."); id . ("Fee disputes concerning the quality and value of legal services rendered by the client's lawyer are frequent. When the issue concerns the reasonableness of the fee, with no complaint about the lawyer's competence, the claim should not be characterized as legal malpractice ...."); see also Dadic v. Schneider , 722 So.2d 921, 923 (Fla. Dist. Ct. App. 1998) ("We further affirm the summary judgment as to the malpractice count for excessive fees. No authority supports a cause of action on this theory."); Davis v. Findley , 262 Ga. 612, 422 S.E.2d 859, 860-61 (1992) (holding the violation of ethics rules regarding excessive fees does not create a cause of action); Luddy v. Osborn , 186 A.D.2d 1069, 1069-70, 588 N.Y.S.2d 225 (1992) (over-billing does not support cause of action for negligence).
To the extent the experts allege Respondents somehow committed malpractice by successfully defending the foreclosure action, *183 this is also insufficient to create a genuine issue of material fact. Given the extraordinarily beneficial result she received, Gibson cannot demonstrate any damages proximately flowing from Respondents' representation. See Gray v. S. Facilities, Inc. , 256 S.C. 558, 570-71, 183 S.E.2d 438, 444 (1971) ("Neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation."). Despite the experts' armchair critique of Respondents' complete victory on Gibson's behalf, Gibson's only evidence of the essential element of damages relates to the setting and collection of a fee she now claims was excessive, which we have held cannot in itself constitute legal malpractice. Harris Teeter, Inc. v. Moore & Van Allen, PLLC , 390 S.C. 275, 289, 701 S.E.2d 742, 749 (2010) (affirming summary judgment on legal malpractice claim due in part to lack of expert testimony necessary to prove proximate cause).
iii. Unjust Enrichment
Gibson also claims quantum meruit, the equitable remedy for unjust enrichment, but that cause of action cannot undo what she agreed to do in the fee agreement. Although Gibson pled rescission, there is no evidence of mutual mistake, fraud, coercion, or duress, nor is the rescission claim preserved for appellate review. As we have held the November fee unambiguous as a matter of law, Gibson cannot now claim **356 unjust enrichment. A party cannot disavow a binding contract and pursue quantum meruit, no matter how green the grass of equity may seem. Swanson v. Stratos , 350 S.C. 116, 122, 564 S.E.2d 117, 120 (Ct. App. 2002) ; see 66 Am. Jur. 2d Restitution and Implied Contracts § 68 (2018) ("[I]t is a defense to an action in quantum meruit that there is a valid express contract covering the supplied services or material furnished." (footnotes omitted) ).
iv. Remaining Claims
Although Gibson's brief states genuine issues of material fact exist as to all of her causes of action, the only claims we have not already addressed that she offers substantive argument and authority on are negligent misrepresentation and violation of SCUTPA. See Glasscock, Inc. v. U.S. Fid. & Guar. Co. , 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001) ("[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review."). Neither of these claims were preserved for appellate review. They were not argued at the summary judgment hearing, and the trial court did not rule on them specifically in its order. From the record we have been furnished, it appears Gibson did not ask the court to address them in her reconsideration motion. See Wilder Corp. v. Wilke , 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review."); Herron v. Century BMW , 395 S.C. 461, 465, 719 S.E.2d 640, 642 (2011) ("Issue preservation rules are designed to give the trial court a fair opportunity to rule on the issues, and thus provide [appellate courts] with a platform for meaningful appellate review." (quoting Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp. , 368 S.C. 342, 373, 628 S.E.2d 902, 919 (Ct. App. 2006) ) ). Accordingly, the trial court's grant of summary judgment to Respondents is
AFFIRMED.
KONDUROS and MCDONALD, JJ., concur.