2533

Doward FRASIER and Lorene Frasier, Respondents v.
PALMETTO HOMES OF FLORENCE, INC., Appellant.

(473 S.E. (2d) 865)

Court of Appeals

*M.M. Weinberg, Jr.,* of *Weinberg, Brown & McMillan,* Sumter, *for appellant.*

*William P. Hatfield* and *Gary I. Finklea,* both of the *Hyman Law Firm,* Florence, *for respondents.*

Heard June 4, 1996.

Decided July 8, 1996; Reh. Den. Aug. 22, 1996.

HEARN, Judge:

Doward Frasier and Lorene Frasier (the Frasiers) brought this action against Palmetto Homes of Florence, Inc., and Robert Braddock, alleging fraud and deceit, unfair trade practices, conversion, and breach of contract accompanied by a fraudulent act involving the attempted purchase of a mobile home. The jury returned a verdict in favor of the Frasiers and against Palmetto Homes of Florence, Inc., for breach of contract in the amount of $4,000 actual damages, unfair trade practices in the amount of $4,000 actual damages plus interest with a finding of willful conduct, and conversion in the amount of $4,000 actual damages and $2,000 punitive damages.[1] The trial judge trebled the damages and awarded interest. Palmetto Homes of Florence, Inc. appeals. We reverse.

## FACTS

In March of 1983, Palmetto Homes of Florence, a mobile home retail sales outlet, was incorporated with Ray Sanford as the sole stockholder. The business was located on 2623 East Palmetto Street in Florence. Robert Braddock was employed by Palmetto Homes of Florence, Inc. from the start of the business until March 5, 1991.

In the early part of 1991, Sanford was diagnosed with colon cancer, which precipitated his retirement. In March of 1991, Sanford sold the corporate assets to Glenn Cox, who formed a new corporation entitled C & C, Inc., of Florence d/b/a Palmetto Homes (C & C). C & C operated its business at the same location. The business license for Palmetto Homes of

---

[1] Prior to the submission of the case to the jury, the trial judge granted Braddock's motion for a directed verdict as to all causes of action, and granted Palmetto Homes of Florence, Inc.'s motion for a directed verdict as to fraud and deceit.

Florence, Inc. was voided in order that C & C, Inc. of Florence d/b/a Palmetto Homes could apply for a license. Cox hired Braddock as a sales manager for C & C.

On May 18, 1992, Lorene Frasier and her three sisters went to Florence from Longs, South Carolina to look for a mobile home. They stopped at one mobile home dealership and then proceeded next door to C & C. There they talked with Braddock about purchasing a mobile home located on the lot. The purchase price of the mobile home was $42,000, which required a down payment of $4,000. On that day, Lorene Frasier paid Braddock $2,000 in cash. After receiving the cash, Braddock filled out a receipt from the receipt book owned by Palmetto Homes of Florence, Inc. On the receipt inscribed with "Palmetto Homes of Florence, Inc." and the address, Braddock handwrote "C & C, Inc." above "Palmetto Homes."

On June 6, 1992, Lorene Frasier returned to the lot and paid Braddock an additional $2,000 in cash. Braddock again filled out a cash receipt identical to the first one; however, he did not superimpose the words "C & C, Inc." on the receipt.

When the Frasiers did not receive the mobile home on the delivery date of July 4, 1992, they returned to the lot and discovered Braddock was no longer employed there and that the mobile home they had selected had been sold. The Frasiers spoke with Mike Purvis, who had been hired by Cox as general manager in July of 1992, and requested a refund. Purvis told the Frasiers the money was in a bank account in Charleston, the home office of C & C, and that the money would be returned to them within three days. The Frasiers never received their deposit.

In March of 1993, Cox went out of business and Sanford took over the business. Sanford applied for and was given a business license in the name of Palmetto Homes of Florence, Inc.

## DISCUSSION

Palmetto Homes of Florence, Inc. asserts the trial judge erred in denying its motion for a directed verdict on the question of whether or not Braddock had apparent authority to act as its agent. We agree.

In deciding a motion for a directed verdict, the evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party. If

more than one inference can be drawn from the evidence, the case must be submitted to the jury. *Dalon v. Golden Lanes, Inc.,* — S.C. —, 466 S.E. (2d) 368 (Ct. App. 1996). In ruling on the directed verdict motion, the trial court does not have the authority to decide credibility issues nor to resolve conflicts in the testimony and evidence. *Garrett v. Locke,* 309 S.C. 94, 419 S.E. (2d) 842 (Ct. App. 1992). However, if the evidence does not yield more than one inference, a directed verdict in favor of the moving party is proper. *Cock-n-Bull Steak House, Inc. v. Generali Ins. Co.,* — S.C. —, 466 S.E. (2d) 727 (1996).

Generally, agency is a question of fact. *Gathers v. Harris Teeter Supermarket,* 282 S.C. 220, 317 S.E. (2d) 748 (Ct. App. 1984). Agency may be implied or inferred and may be proved circumstantially by the conduct of the purported agent exhibiting a pretense of authority with the knowledge of the alleged principal. *Fernander v. Thigpen,* 278 S.C. 140, 293 S.E. (2d) 424 (1982). If there are any facts tending to prove the relationship of agency, it then becomes a question for the jury. *Gathers v. Harris Teeter Supermarket.*

"A party asserting agency as a basis of liability must prove the existence of the agency, and the agency must be clearly established by the facts." *Orphan Aid Society v. Jenkins,* 294 S.C. 106, 109, 362 S.E. (2d) 885, 887 (Ct. App. 1987) (quoting *McCall v. Finley,* 294 S.C. 1, 362 S.E. (2d) 26 (Ct. App. 1987)). "It is the duty of one dealing with an agent to use due care to ascertain the scope of the agent's authority." *Id.*

The doctrine of apparent authority provides that the principal is bound by acts of his agent when he has placed the agent in such a position that a person of ordinary prudence, reasonably familiar with business usages and custom, is led to believe the agent has certain authority and in turn deals with the agent based on that assumption. *Muller v. Myrtle Beach Golf and Yacht Club,* 303 S.C. 137, 399 S.E. (2d) 430 (Ct. App. 1990), *rev'd on other grounds,* 313 S.C. 412, 438 S.E. (2d) 248 (1993).

Apparent authority to do an act is created as to a third person by written or spoken words *or any other conduct of the principal* which, reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to

act for him. Restatement (Second) of Agency § 27 (1958); *Muller v. Myrtle Beach Golf and Yacht Club*, 303 S.C. at 142, 399 S.E. (2d) at 433. Either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such belief. *Id.* Moreover, an agency may not be established solely by the declarations and conduct of an alleged agent. *Muller v. Myrtle Beach Golf and Yacht Club*, 303 S.C. at 142-43, 399 S.E. (2d) at 433.

To establish apparent agency, it is not enough simply to prove that the purported principal by either affirmative conduct or conscious and voluntary inaction has represented another to be his agent or servant. *Watkins v. Mobil Oil Corp.*, 291 S.C. 62, 352 S.E. (2d) 284 (Ct. App. 1986). In order for a third party to recover against the principal based upon this theory, it must be shown that he reasonably relied on the indicia of authority *originated by the principal* and such reliance must have affected a change of position by the third party. *Beasley v. Kerr-McGee Chem. Corp., Inc.*, 273 S.C. 523, 257 S.E. (2d) 726 (1979); *Watkins v. Mobil Oil Corp.*

Appellant argues there was no evidence introduced at trial which would create any reasonable inference that C & C or Robert Braddock had apparent authority to act as the agent of Palmetto Mobile Homes of Florence, Inc. We agree.

Although Braddock originally admitted in his *pro se* Answer that he was employed by Palmetto Homes of Florence, Inc., it is clear from a reading of the Answer that he was referring to the entity owned by Glenn Cox, not to the prior business owned by Sanford. Moreover, Braddock testified at trial that while he previously had been employed by Sanford's Palmetto Homes of Florence, Inc., he was employed by Cox at the time he dealt with the Frasiers. It was undisputed that the headquarters for Cox's corporation was in Charleston. Braddock testified during the time he worked for Cox, Sanford never came on the sales lot and had no communication with the dealership. In terms of the billboards, Braddock testified when Cox purchased the business the billboard advertised "Palmetto Homes of Florence." He further testified when Sanford owned the business the billboard advertised "Palmetto Homes of Florence, Inc.," but the day Cox assumed

control the "Inc." was painted over. Braddock stated Sanford had instructed that the sign be changed by the buy-out date.

Although Braddock admitted that when the Frasiers paid him their deposit he gave them cash receipts taken from the receipt book of Palmetto Homes of Florence, Inc. Braddock stated when Sanford left, he tried to put everything that was his, including paperwork, documents, and customer files, into boxes. He further testified the receipt books were inadvertently left behind and Cox's secretary found them. When Braddock told Cox they were not the "right receipts," Cox told him to use the receipts and write "C & C" on them. Braddock testified Cox did not have new forms printed for his corporation. Braddock stated he gave the Frasiers' deposit to the secretary, who in turn deposited the money into C & C, Inc.'s account. He further testified Palmetto Homes of Florence, Inc. did not receive any of the money.

There was no evidence presented that Sanford had any input into the business after the sold it to Cox in March of 1991. Sanford testified he did not consent nor did he have knowledge that Cox was operating the corporation with the name of "Palmetto Homes" or "Palmetto Homes of Florence." Sanford stated he was not aware the receipt books had been left behind when he sold the business. There was absolutely no evidence that Sanford, either personally or through his former corporation, received the Frasiers' deposit of $4,000. Sanford testified he took over the business from Cox when Cox "went broke" because he had personally guaranteed Cox's floor plan. Sanford stated after he took over the business he had to apply for a license to change ownership to "Palmetto Homes of Florence, Inc."

The Frasiers did not submit any evidence to contradict Sanford's and Braddock's version of what transpired. Indeed, the sole evidence adduced at trial which linked Appellant to the events giving rise to this lawsuit were the receipt books which Sanford apparently left behind, the sign which had the word "Inc." painted over, and the fact the Frasiers dealt with a salesman (Braddock) who formerly had been employed by Appellant. No evidence was presented that anyone other than C & C profited by the failure to return the Frasiers' deposit.

At the close of the Frasiers' case, the trial judge denied Palmetto Homes of Florence, Inc.'s motion for a directed verdict.

The trial judge reasoned that based on the Palmetto Homes signs, the cash receipts and same lot and salesman, there was an inference that Palmetto Homes of Florence, Inc. had knowledge that its name was being used by C & C.[2] We disagree. Based on our review of the record, we find there was insufficient evidence to submit the case to the jury based on the doctrine of apparent authority.

Apparent authority must be established based upon the manifestations of the principal, not the agent. *Orphan Aid Society v. Jenkins*, 294 S.C. at 106, 362 S.E. (2d) at 887. Braddock was the only person directly involved in the Frasiers' attempted purchase of the mobile home. There is no evidence that Sanford or his business, Palmetto Homes of Florence, Inc., made representations to the Frasiers. Furthermore, Sanford's lack of knowledge of Cox's use of the receipt books and billboards bearing the Palmetto Homes name does not rise to the level of "conscious and voluntary inaction" necessary to establish apparent authority. *See Watkins v. Mobil Oil Corp.*

It is undisputed there was no employment relationship between Braddock and Sanford at the time Braddock dealt with the Frasiers. Braddock testified after Sanford sold the business to Cox, he was employed by and reported to Cox. Sanford's testimony corroborated the absence of an employment relationship. Moreover, it is uncontroverted that C & C, Inc. d/b/a Palmetto Homes of Florence and Palmetto Homes of Florence, Inc. had separate and distinct business licenses.

Finally, there is no evidence the Frasiers relied on the alleged apparent authority. Lorene Frasier testified she stopped at the business because it was next door to another unrelated mobile home business. Although the Frasiers testified they saw billboards bearing the name of Palmetto Homes, there is no evidence they relied on Appellant as to business practice, reliability or solvency. *Cf. Watkins v. Mobil Oil Corp.* (plaintiff failed to establish apparent agency where he went to a Mobil station, operated by Station Operators, Inc., to buy

---

[2] The trial judge also focused on the conduct of Mike Purvis, the general manager of C & C who spoke with the Frasiers when they learned the mobile home had been sold. There is no question, however, that Purvis was hired by Glenn Cox after Sanford sold the business. Moreover, the allegations in the Frasiers' complaint are directed solely at Braddock, who they assert was acting as the agent of Palmetto Homes.

cigarettes and not gasoline, the only reason he chose the station was because of its proximity to his house, and there was no evidence that he was attracted to the station because it was a Mobil station or that he was enticed by Mobil's advertising to visit the station).

Accordingly, we find the trial court erred in denying Palmetto Homes of Florence, Inc.'s motion for a directed verdict.[3] We reverse and remand for entry of judgment in favor of Appellant.

Reversed and remanded.

HOWELL, C.J., and HUFF, J., concur.

---

[3] Appellant asserts the trial judge's grant of a directed verdict in favor of Braddock's exonerated it of liability, citing *Brown v. National Oil Co.*, 233 S.C. 345, 105 S.E. (2d) 81 (1958), and *JKT Co. Inc. v. Hardwick*, 274 S.C. 413, 265 S.E. (2d) 510 (1980). In light of our decision, we need not address this argument.