THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Brenda R. Babb, Appellant,
 v.
 The Estate of
 Charles L. Watson, and Eleanor G. Watson and Pamela Watson Fehlig, as
 Personal Representatives of the Estate of Charles L. Watson, and CLW
 Investments, Inc., d/b/a Salt Marsh Cove, and Wilbur M. McLamb, individually,
 Little River Campground, Inc., and Carl Meares, individually, Respondents.
 
 
 

Appeal from Charleston County
Daniel F. Pieper, Circuit Court Judge
Unpublished No. 2008-UP-247
Submitted May 1, 2008  Filed May 2, 2008
AFFIRMED

 
 
 
 Brenda R. Babb, of Calabash, North Carolina, pro se, Appellant.
 Stephen V. Futeral, of Mount Pleasant, for Respondents.
 
 
 

PER
 CURIAM:  Brenda R. Babb (Babb)
 appeals the circuit courts order for the Respondents arguing (1) the statute
 of limitations expired before their declaratory judgment counterclaim was
 filed, (2) the counterclaim did not relate back to the date of the original
 pleadings, and (3) the circuit court erred in ruling on the Respondents waiver
 defense because it had been disposed of prior to trial by summary judgment.  We
 affirm.[1]
Facts
At an auction conducted by the United States Marshals Service in June 1991, Babb, Charles Watson, and Carl Meares submitted a
 successful bid of $400,000 for an 8.4 acre parcel of land known as Little River
 Campground (the Campground) in Horry County, South Carolina.  Babb, Watson and
 Meares each paid $25,000 earnest money to hold their interest, leaving a
 balance of $375,000.  The parties agreed to form a corporation in which the Campground
 would be the corporations asset.  Babb, Watson and Meares would be
 shareholders with a one-third interest in the corporation.  In August, 1991,
 the parties filed articles of incorporation for Little River Campground
 Incorporated (LRCI).  Babbs husband, Mac Babb, was appointed president and
 Watson was Secretary and Treasurer.  In April 1995, Watson issued three LCRI
 stock certificates, one to each party, and mailed them to Mac Babb for his
 signature as president.  Babb is in possession of her stock certificate though
 the parties contest whether the certificates were ever satisfactorily signed
 and delivered before closing.  
Due
 to environmental cleanup efforts, the sale of the property was not closed until
 December 6, 1995, at which time Babb, Watson and Meares each paid $125,000. 
 Prior to closing, however, Babb instructed the closing attorney, John Martini
 (Martini), to deed to her a one-third undivided interest in the 8.4 acres.  It
 is undisputed that upon closing, LRCI was deeded a two-third undivided interest
 in the property and Babb was deeded an undivided interest in one-third.  
Babb
 contended that she became aware that 4.2 acres of land adjacent to the
 Campground was available for purchase.  In amended pleadings, she stated the
 parties discussed forming a new corporation in which to title this new acreage
 and any subsequently acquired real property.  The parties concede the acreage
 was purchased and titled to CLW Investments, a real estate investment company
 operated by respondents Watson and McLamb.  
On June
 24, 1997, Babb commenced a derivative suit against Watson, and McLamb
 concerning the purchase.[2]  Respondents answered with general denials.  Babb filed an amended
 complaint on August 10, 1998, naming as plaintiffs LRCI; Mac Babb, as an
 officer and director of LRCI; and herself individually and as a shareholder.  The
 case was stricken from the roster pursuant to Rule 40(j), SCRCP, but restored
 by motion in May 1999.  Respondents filed an amended answer in April 2001. 
 This answer provided in part:

 
 
 2.
 To the extent that Plaintiffs Complaint infers 
 that Plaintiff Brenda Babb is shareholder in Little River 
 Campground, Inc., such allegation is denied and strict proof is 
 demanded thereof.
 
 

In addition to general
 admissions and denials, the answer asserted no agreement was reached concerning
 the purchase of the adjacent property.  It asserted the defenses of unclean
 hands, waiver by Babb of any legal or equitable interest in LRCI, and laches. 
 The answer additionally requested a 12(b)(6) dismissal.  Pursuant to
 Respondents motion, LRCI and Mac Babb were dismissed from the case on May 25,
 2001.  
In
 June 2001, Respondents filed and served an amended answer that included a
 counterclaim for slander of title.  A reply to the amended answer and
 counterclaim was filed July 26, 2001.  Regarding the counterclaim, Babb claimed
 Respondents failed to bring the counterclaim within the applicable statute of
 limitations, and asserted the additional defense of laches.
Respondents
 moved to transfer the suit to the non-jury roster and requested that any
 equitable shareholders claim should be resolved prior to a jury trial on any
 remaining issues.  The order was granted with the circuit court finding:

 
 
 1)   
 The gravamen of Plaintiffs
 complaint is a shareholders derivative suit filed on behalf of Little River
 Campground, Inc. against Defendants alleging they usurped a corporate
 opportunity.
 
 
 
 2)
 That many, if not all, of the other claims asserted 
 by Plaintiffs have, as their basis, a claim that Defendants were 
 alleged required to acquire land on behalf of Little River 
 Campground, Inc. and that Defendants usurped a corporate 
 opportunity;
 
 

On
 July 26, 2002, Babb filed an amended reply to Respondents second amended
 answer and counterclaim.  In addition to a general denial, Babb reiterated the
 statute of limitations and laches defenses.  
The
 circuit court in Charleston County, on June 18, 2003, addressed several motions
 filed by the parties.  Relevant to this appeal, Babbs motion to amend and
 dismiss her claims as a shareholder in LRCI was granted.  
Babb
 moved for summary judgment on Respondents slander of title counterclaim and
 the defenses of unclean hands and waiver.  By an order filed December 29, 2003,
 summary judgment was granted to Babb on the slander of title counterclaim.  The
 circuit court acknowledged Babbs claims as a shareholder had been dismissed at
 her request.  The court stated:

 Because
 her damage claims as a shareholder have been dismissed, defendants affirmative
 defenses as to those claims should likewise be dismissed.  Therefore,
 plaintiff is hereby granted summary judgment on defendants defenses of unclean
 hands and waiver.

(emphasis added).
Respondents
 moved for a third amended answer and counterclaim in December 2003.   The
 answer added LRCI and shareholder Carl Meares as parties.  It repeated the same
 general admissions and denials contained in previous answers.  Pertinent to this
 appeal, as a defense and by way of a counterclaim, Respondents raised a
 declaratory judgment action.  In support, Respondents contend they are entitled
 to a court order declaring Babb (1) waived any legal or equitable interest in
 LRCI by request and receipt of an undivided one-third interest; (2) is barred
 from claiming interest by the unclean hands doctrine; and (3) is not a
 shareholder in LRCI.  
The circuit court
 granted Respondents motion to amend the answer and counterclaim and add
 parties on January 5, 2004.  The order stated:

 [I]t
 appears that the matters which Defendants seek to raise by amendment are matters
 which have been litigated by these parties for the past several years this
 action has been pending.  Under these circumstances, Plaintiff is not
 prejudiced by such amendment.

Babb
 filed her reply to the third amended answer and counterclaim on March 4, 2004. 
 In June 2004, the declaratory action was heard at a bench trial.  The sole
 issue was whether Babb was a shareholder in LRCI.  The circuit court ruled in
 favor of Respondents.  
Discussion 
Babb
 argues the circuit court erred by (1) hearing Respondents counterclaim because
 the statute of limitations had expired; (2) finding the counterclaim related
 back to the date of the original pleadings; and (3) ruling on Respondents
 waiver defense because it had previously been dismissed by summary judgment.  We
 disagree.

 According to the discovery rule, the
 statute of limitations begins to run when a cause of action reasonably ought to
 have been discovered. The statute runs from the date the injured party either
 knows or should have known by the exercise of reasonable diligence that a cause
 of action arises from the wrongful conduct.

Hedgepath v. AT&T, 348 S.C. 340, 355-56, 559 S.E.2d 327, 336 (2001)
 (quoting Dean v. Ruscon, 321 S.C. 360, 468 S.E.2d 645 (1996)).  The
 exercise of reasonable diligence means simply that an injured party must act
 with some promptness where the facts and circumstances of an injury would put a
 person of common knowledge and experience on notice that some right of his has
 been invaded or that some claim against another party might exist.  Wiggins
 v. Edwards, 314 S.C. 126, 442 S.E.2d 169 (1994).  The fact that an injured
 party may not comprehend the full extent of the damage is immaterial.  Dean
 v. Ruscon Corp., 321 S.C. 360, 468 S.E.2d 645 (1996).  In State ex rel.
 Condon v. City of Columbia, 339 S.C. 8, 19, 528 S.E.2d 408, 414 (2000), our
 Supreme Court instructed:

 Statutes of limitations embody important public policy
 considerations in that they stimulate activity, punish negligence, and promote
 repose by giving security and stability to human affairs.  One purpose of a
 statute of limitations is to relieve the courts of the burden of trying stale
 claims when a plaintiff has slept on his rights.  Another purpose ... is to
 protect potential defendants from protracted fear of litigation.

Here, Babb asserts
 the statute of limitations began to run with the December 6, 1995 closing on
 the Campground.  She contends Respondents knew or should have known she claimed
 a one-third interest in both LRCI and the Campground.  According to Babb, Respondents
 declaratory judgment action was barred on December 5, 1998.  Respondents filed
 the action January 16, 2004.  
Respondents
 argue the counterclaim for declaratory judgment relates back to Babbs initial
 lawsuit pursuant to Rule 15(c), SCRCP.  Rule 15 provides in pertinent part:

 (c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended
 pleading arose out of the conduct, transaction or occurrence set forth or
 attempted to be set forth in the original pleadings, the amendment relates back
 to the date of the original pleading.

The
 central requirement here is that the party defending against the new claim have
 sufficient notice of it, i.e., the new claim must be logically
 related to the matters originally pleaded so that the defendant is not
 prejudiced by the new claim asserted after the statute of limitations has expired.   Whitfield
 Constr. Co. v. Bank of Tokyo Trust Co., 338 S.C. 207, 223, 525 S.E.2d 888,
 897 (Ct. App. 1999) (quoting James F. Flanagan, South Carolina Civil
 Procedure 127 (2d ed.1996)) (emphasis in original).  

 In federal practice, the factors to determine whether or not a
 claim arose out of the same conduct, transaction, or occurrence set forth in
 the original pleading include: (1) whether the party defending against the new
 claim had notice of it; (2) whether the party seeking to add the new claim will
 rely on the same kind of evidence offered in support of the original claim to
 prove the new claim; and (3) whether unfair surprise to the defending party
 would result if the amendment were to relate back.

Id.  (citing James Wm. Moore, Moores
 Federal Practice § 15.19[2]  (Daniel R. Coquillete et al eds., 3d
 1999)).
In Whitfield, the defendant bank asserted a counterclaim
 for abuse of process after the statute of limitations had run.  This court
 instructed, [t]he proper inquiry is whether [the defendant] had ever provided
 notice in any of its prior pleadings that it intended to allege such a
 counterclaim, not whether Whitfield should have anticipated that the
 counterclaim would follow as a result of his own actions.  Id.  The
 defendants first responsive pleading presented only general denials and
 certain defenses.  A first amended counterclaim added an unjust enrichment
 counterclaim and prayed for a set-off, but it was otherwise similar to the
 original answer.  Neither pleading suggested the plaintiff made improper use of
 process, and [w]ithout any indication in its prior responsive pleadings that Whitfield
 was to defend against such an allegation, we fail to see how [the defendant]
 had set forth, or even attempted to set forth, the conduct, transaction, or
 occurrence giving rise to a counterclaim for abuse of process.  Id. at 224, 525 S.E.2d at 897.  The court noted the lack of any serious dispute that
 the defendant knew or should have known it had an abuse of process counterclaim
 when the complaint was filed.  Id. at 224, 525 S.E.2d at 898.  The
 question of whether the amendment resulted in actual prejudice to Whitfield is
 not a factor in determining whether the counterclaim is barred by the statute
 of limitations.  Id. at 224-25, 525 S.E.2d at 898.  Accordingly, the
 counterclaim did not relate back.
Here,
 the circuit court judge inquired whether Respondents ever gave notice in prior
 pleadings of an intention to allege a counterclaim for a declaratory judgment
 that Babb was not a shareholder in LRCI.  He determined the first answer filed
 July 16, 1997, included only general denials and certain defenses.  But after
 Babb first asserted she was a shareholder in her amended complaint filed August
 10, 1998, Respondents amended answer in reply specifically denied Babb was a
 shareholder in LRCI.  The circuit judge found [u]nlike in Whitfield,
 the defendants in the instant case indicated in their prior responsive
 pleadings that the plaintiff was to defend against the allegation that she was
 not a shareholder of [LRCI].   Accordingly, the circuit judge concluded the
 declaratory judgment counterclaim arose out of the conduct, transaction, or occurrence
 set forth or attempted to be set forth in the original pleading, the plaintiff
 had sufficient notice of the claim, and the claim is logically related to the
 matters originally pled.  
The
 circuit court judge further noted the issue had previously been decided by an
 order filed January 4, 2004, by a different circuit court judge.  There, Respondents
 motion to amend their answer and assert the counterclaim was granted.  The
 judge granting the motion determined, it appears that the matters which [Respondents]
 seek to raise by amendment are matters which have been litigated by these
 parties for the past several years this action has been pending.  Importantly,
 no motion to alter or amend the ruling has been made by either party, nor has
 there been a request to reconsider.  Thus, the judge issuing the declaratory
 judgment correctly acknowledged he had no right to reconsider the order of
 another circuit judge.  See Dinkins v. Robbins, 203 S.C. 199,
 202, 26 S.E.2d 689 (1943) (the prior order of one Circuit Judge may not be
 modified by the subsequent order of another Circuit Judge, except in cases
 where the right to do so has been reserved to the succeeding Judge, when it is
 allowed by rule or statute, or when the subsequent order does not substantially
 affect the ruling or decision represented by the previous order.)  
In
 their counterclaim, Respondents argued Babb waived any legal or equitable
 interest she had in [LRCI], inasmuch as she requested and received an undivided
 one-third interest in 8.4 acres (2.8 acres) that was to be titled, in its
 entirety, in the name of [LRCI].  Waiver is a voluntary and intentional
 abandonment or relinquishment of a known right.  Murdock v. Murdock,
 338 S.C. 322, 333, 526 S.E.2d 241, 247 (Ct. App. 1999) (citing Parker v.
 Parker, 313 S.C. 482, 443 S.E.2d 388 (1994)).  Waiver may be express or implied
 by a partys conduct.  Parker, 313 S.C. at 487, 443 S.E.2d at 391.  Acts
 inconsistent with the continued assertion of a right may implicate waiver.  Provident
 Life and Acc. Ins. Co. v. Driver, 317 S.C. 471, 478, 451 S.E.2d 924, 928
 (Ct. App. 1994).  Whether a party is barred by waiver can only be determined
 in light of the circumstances of each case.  Janasik v. Fairway Oaks Villas
 Horizontal Property Regime, 307 S.C. 339, 344, 415 S.E.2d 384, 388 (1992). 
 Waiver is an affirmative defense and the party asserting it has the burden of
 proof.  Provident Life and Acc. Ins. Co., 317 S.C. at 478, 451 S.E.2d at
 928; Frady v. Smith, 247 S.C. 353, 147 S.E.2d 412 (1966).  Generally,
 the party claiming waiver must show that the party against whom waiver is
 asserted possessed, at the time, actual or constructive knowledge of his rights
 or of all the material facts upon which they depended.  Janasik, 307
 S.C. at 344, 415 S.E.2d at 387-88.
Babb
 argues Respondents use of waiver is an inappropriate offensive use of the
 doctrine.  See Janasik, 307 S.C. at 345, 415 S.E.2d at 388
 (waiver is protective only and not to be used as an offensive weapon).  However,
 the circuit court concluded the Respondents asserted waiver to protect their
 purported investment, to shield [Babb] from claiming an interest in which they
 do not concede she has a right.  We agree.
Babb
 brought her shareholder status into contention when she brought a shareholder
 derivative action.  When Babb voluntarily dismissed her claims as a shareholder
 over Respondents objection, the record shows Respondents expressed to the
 court their desire that the order reflect their continued claims that Babb was
 not a shareholder.  Babb contends that because she had dismissed her
 shareholder claims, Respondents were without a cause of action requiring this
 defense.  However, as the circuit judge stated, Respondents only raised the
 declaratory judgment action upon the dismissal of her shareholder claims.    
The Uniform Declaratory Judgments Act does not create substantive
 rights or duties; rather it authorizes an action to establish a partys
 entitlement to a pre-existing right.  Harvey v. South Carolina Dept
 of Corrections, 338 S.C. 500, 527 S.E.2d 765 (Ct. App. 2000); see also Noisette v. Ismail, 299 S.C. 243, 247 n. 1, 384 S.E.2d 310, 312 n. 1
 (Ct. App. 1989), revd in part by 304 S.C. 56, 403 S.E.2d 122 (1991); S.C.
 Code Ann. § 15-53-10 et. seq. (2005).  Respondents counterclaim
 seeking to establish their right to possess the shares of LRCI was authorized
 by the Declaratory Judgments Act.  
Respondents, however, carried the burden to prove Babb waived her
 interest in LRCI.  The parties agree LRCI was formed solely for the purpose of
 holding the 8.4 acres of land known as Little River Campground.  Articles of
 incorporation were filed with the Secretary of State in August, 1991.  Further,
 the parties agree Babb was deeded an undivided one-third interest in the Campground. 
 A review of the record leads this court to agree with the circuit court that
 Babb voluntarily and intentionally abandoned or relinquished any right to a one-third
 interest in LRCIs corporate shares.  
According to Meares testimony, at the time of LRCIs formation in
 1991, no stock certificates were issued.  Between 1991 and 1995, no shareholder
 agreement existed, and no formal meetings were held to take votes.  As of 1991,
 Meares agreed Babb was a shareholder.  Due to contamination issues, it took
 from 1991 to 1995 to close on the property.  Together with Mac Babb and the
 help of attorneys, Meares worked on the environmental cleanup.  He was involved
 with correspondence and phone calls, and attended numerous related meetings
 with Mac Babb.  Meares testified that he and Mac Babb volunteered their
 efforts, spent roughly the same time working on the cleanup, and had never had
 any agreement that the two would be compensated.  Further, he said he never had
 a conversation with Babb indicating she would receive more than a one-third
 interest in the Campground.  
On April 4, 1995, Watson sent to Babb and Mac Babb three
 promissory notes for $5000 to be executed by each investor, a proposed
 shareholder agreement, and stock certificates for Babb, Watson and Meares.  Although
 signed by Watson as secretary of LRCI, to be valid, the certificates required
 Mac Babbs signature as president.  The record indicates on May 17, 1995,
 Watson sent a revised shareholder agreement to Babb and Mac Babb and requested
 again that Mac Babb sign and return the stock certificates.  At trial, Jerry
 Fehlig, Watsons son-in-law and current LRCI secretary, and Meares both
 testified to never having seen any stock certificates bearing both required
 signatures.  Whereas Respondents produced copies of certificates for Meares and
 Watson bearing only Watsons signature, Babb introduced into evidence an
 original stock certificate bearing the signatures of Watson and Mac Babb.  Citing Ward v. Atlas Construction Company, Inc., 276 S.C. 346, 278 S.E.2d 621 (1981),
 the circuit court explained in its order mere possession of a stock certificate
 is not dispositive.
Respondents contend Babb and Mac Babb created the shareholder
 claim by Mac Babb signing the stock certificate after the closing on the Campground
 and the death of Watson.  Mac Babb stated in his deposition he did not remember
 the date he signed the certificates, but he knew it was after April the 26th of 1995.  At trial, Babb testified she saw Mac Babb sign the stock
 certificates in Watsons office and believed this happened in early June. 
 However, in her earlier deposition Babb reported she did not know when Watson
 sent the certificates to Mac Babb, whether they were signed by him as president
 of LRCI, or if Mac Babb transmitted the certificates to the other
 shareholders.  Babb explained the differing testimony resulted from her
 reviewing her records and notes some time after being deposed.  The circuit
 court observed even if she was much better prepared for trial, the trial was
 in 2004, three years after the deposition and ten years removed from the events
 in question.
Meares and Fehlig said Babb first produced her stock certificate
 bearing both signatures during discovery in 2001 or 2002.  Both told the court
 the other stock certificates sent simultaneously to Mac Babb for his signature
 were never signed and returned.  Fehlig further testified at trial that his
 review of corporate records failed to disclose any agreements concerning Babbs
 shareholder claim in LRCI.  Fehlig found neither corporate records documenting
 Mac Babbs LRCI activities nor any documents or corporate resolutions professing
 to give away interest in LRCI to Babb.  The record indicates no corporate
 bank account was established.  The $5000 promissory notes and a shareholders
 agreement were never executed.  However, the circuit judge in his order
 concluded even if the circumstances surrounding the stock certificates seem
 suspicious, the defendants have not proven fraud on the part of the plaintiff
 in the procurement of the signed stock certificate.

 In his deposition, Mac Babb was asked:
 
 
 Q:
 Do you have any knowledge whether initially the 
 deed for Little River Campground at closing was going to be 
 deededthe property was going to be deeded solely in the name of [LRCI]?
 
 
 
 A: 
 It was never intended for that to happen.
 
 
 
 Q:
 Neverfrom what point was it never intended.
 
 
 
 A: 
 Never intended.
 
 

However, the circuit judges order indicates a letter entered into
 evidence indicated on October 3, 1995, Mac Babb, as president, received a letter
 from the General Services Administration asking if Mac Babb to [p]lease
 confirm that [Mac Babb] still desire[d] to have the deed identify the grantee
 as [LRCI].  A second letter from the General Services Administration dated
 November 2, 1995, asked Mac Babb to again confirm whether he still wanted the
 deed to identify LRCI as the grantee.  On November 13, 1995, Brandon sent a
 letter and a copy of the deed to closing attorney Martini.  Brandon indicated
 the original deed would be overnighted to Martini upon receipt of the
 checks.  
The
 record shows Babb entered evidence that on November 14, 1995, she delivered a
 letter to closing attorney Martini that included a cashiers check for $125,000
 representing the purchase of one-third of the Campground.  Babb further
 indicated to Martini:

 The deed should identify me as Grantee for my portion of this
 transaction in the following manner and should be confirmed with the [General
 Services Administration] prior to closing by your office:  Brenda Robinson
 Babb, a resident of Brunswick County, North Carolina, a One Third Undivided
 Interest[.]

At trial, Meares testified he received a phone call from Martini before the closing, and
 then phoned Mac Babb in response:

 After I received the call from [Martini], I called thisthis was
 the night before we had to close the next day.  And if we didnt close, the US Marshal Service had already notified us that we would lose the property and our $25,000
 that we originally put down.  And so I got a hold of Mac and asked him why he
 was all of a sudden at the last minute taking his one-third interest outside
 the corporation.  And he said, well, I dont want to be out-moneyed, and we
 just dont feel comfortable being in the corporation.  He said that Brenda
 doesnt feel comfortable being in the corporation, so she wants to take her
 one-third interest outside the corporation.  

Meares reported there was never any conversation with Mac Babb or
 Babb discussing Babbs entitlement to more than the one-third interest outside
 the corporation.  As a result, Meares stated his understanding was that he and
 Watson would be the only shareholders in LRCI.  In a subsequent phone call to
 Martini, Meares told him:

 I told [Martini] that Mac just was not going to cooperate so we
 had no other choice but to go ahead and give [Babb] her one-third interest
 outside the corporation, and I didnt have any choice but to agree to that or
 lose the property.

Babb
 explained at trial that she believed the original agreement between the parties
 was that each would participate with a third.  She averred her understanding
 was based on conversations to which she was a party.  However, in her
 deposition she had previously stated, I dont know what the original
 understanding was because I wasnt involved in those negotiations.  She then
 explained in her testimony:\

 
 
 A: 
 I did not hear what Mr. Meares,
 Mr. Watson, and Mr. Babb discussed at the auction because I was standing at the
 other side of the tent.  What I am referring to is what I heard at the later
 meeting.  
 
 

In
 September 1995, Babb said it was decided she would receive more out of the
 investment.  Babb testified she never gave up or waived her interest in the
 shares of LRCI.  She explained, had she done so, Mac Babb would not have been
 compensated for his services as president.  However, Babbs counsel argued at
 trial there was an additional agreement between the shareholders to compensate
 Mac Babb.  Babb told the court that Mac Babb agreed in 1991 to become the
 president on the condition he be compensated based on his performance, which
 included enhancing the value of the property.  
Over
 his ten years as president, Babb stated Mac Babb secured the tape from the
 auction, attended several meetings in Georgia and South Carolina addressing the
 contamination issue, secured estimates of the dock repair and obtained dock
 permits, and dealt with various zoning matters.  Over the ten year period, Babb
 estimated Mac Babb worked close to 3,000 hours a year on this property.  The
 circuit judge in his order considered this approximation a staggering amount
 of time that this court calls into question.
Babb
 contended a compensation agreement was reached in September 1995.  On direct
 examination, Babb was asked:

 
 
 Q:
 All right.  Lets go back, and you tell the 
 court how it is that you ended up with a deed of one-third interest 
 of the real estate and a stock certificate representing one-third of 
 the stock.
 
 
 
 A:
 [Mac Babbs] compensation was based on his 
 performance.  As a result of his performance, I was given a 
 one-third undivided interest in the property which represented 11 
 percent from Mr. Watson, 11 percent from Mr. Meares.  The reason that I was given a one-third
 undivided interest is if I was given additional stock I would have controlling
 interest in the corporation.
 
 

While
 on the stand, the judge asked Babb:

 
 
 Q:
 [I]s it your position, maam, you
 were paidyou were compensated in this manner for services that you husband
 performed for the corporation?
 
 
 
 A:
 My husband was compensated and my husband gave me 
 the compensation.     
 
 

In its order, the
 circuit court noted:

 [Babb] testified that Meares agreed that she would receive
 one-third (1/3) of the real estate in addition to her stock.  However, [Babb]
 testified at trial that she never had a conversation with Meares about any
 agreement to give her more of an interest.  As indicated previously, Meares
 testified he never had a conversation with [Babb] whereby [she] would receive
 more than a one-third (1/3) share of Little River Campground.

In his
 deposition, Mac Babb said Babb is a shareholder in LRCI, and she additionally holds
 a one-third undivided interest in the 8.4 acre campground.  Respondents
 counsel questioned him on this outcome:

 
 
 Q:
 How is it, if you have three shareholders and they 
 all put in approximately the same amount, she comes out with so much 
 more?
 
 
 
 A: 
 It happens all the time, sir.  It happens all 
 the time, sir.  It happens in most people that dont pay the 
 same.
 
 
 
 Q:
 Okay.  What exactlyso youre sayingwhat are 
 you saying?  Just out of the goodness of their heart Carl Meares or Mr. Watson just said, Here, take some extra acreage?
 
 
 
 A: 
  That may have been what happened.
 
 
 
 
 
 
 
 
 Q: 
 [] I want to know what your personal understanding 
 is as to how that arrangement was reached.
 
 
 
 A:
 I dont know.
 
 
 
 Q:
 Does that seem fair to you, that everybody would 
 put---
 
 
 
 A: 
 It seems fair to me.
 
 
 
 
 
 
 
 
 Q: 
 Was there any additional consideration given by 
 [Babb] to get additional acreage such that while every party put in 
 an equal amount of money she got more acreage than they did?
 
 
 
 A: 
 It happens all the time.
 
 
 
 
 
  
 
 
 Q:
 Explain to me how she ended up getting one-third 
 undivided interest when everybody put in the same amount.
 
 
 
 A: 
 It happened.  
 
 

After a thorough review of the record, this court agrees with the
 order of the circuit court judge.  Although Babb was at one time a shareholder
 in LRCI, Meares testimony that Babb took an undivided one-third interest in
 the real property in lieu of any interest in LRCI is a more credible
 interpretation of the circumstances surrounding the closing on the Campground
 and production of the deed than that offered by Babb.  We find no credible testimony
 that Babb and Meares agreed she would receive more than a one-third share in
 the real estate as a means of compensating Mac Babb for his services as
 president.  Indeed, she told the court her husband was compensated and he gave
 the compensation to her.  However, the record indicates that at her deposition,
 Babb stated she did not know whether Mac Babb ever requested compensation.  Mac
 Babb never mentioned that a compensation agreement was reached or that compensation
 was received by him and given to Babb.  Rather, when asked whether any
 additional compensation supported Babbs one-third interest in LRCI, he simply
 answered [i]t happens all the time.
Despite Babbs argument that any phone call between Meares and Mac
 Babb was insufficient to establish relinquishment of her rights in LRCI, Mac
 Babb represented Babbs interest as her agent throughout the venture. 
 Apparent authority to do an act is created as to a third person by written or
 spoken words or any other conduct of the principal which, reasonably
 interpreted, causes the third person to believe the principal consents to have
 the act done on his behalf by the person purporting to act for him.  R&G
 Constr., Inc. v. LowCountry Regional Transp. Authority, 343 S.C. 424, 433,
 540 S.E.2d 113, 118 (Ct. App. 2000) (citing Frasier v. Palmetto Homes,
 323 S.C. 240, 473 S.E.2d 865 (Ct. App. 1996)).  The elements of apparent agency
 are: (1) purported principal consciously or impliedly represented another to be
 his agent; (2) third party reasonably relied on the representation; and (3) the
 third party detrimentally changed his or her position in reliance on the
 representation.  Id.  When a principal, by any such acts or conduct,
 has knowingly caused or permitted another to appear to be his agent, either
 generally or for a particular purpose, he will be estopped to deny such agency
 to the injury of third persons who have in good faith and in the exercise of reasonable
 prudence dealt with the agent on the faith of such appearances.  Id. (citing Mortgage & Acceptance Corp. v. Stewart, 142 S.C. 375, 140
 S.E. 804 (1927).  Generally, agency is a question of fact and may be implied or
 inferred and proven circumstantially by the conduct of the purported agent
 showing a pretense of authority with the alleged agents knowledge.  Id.
We find Mac Babb was an apparent agent of Babb with the authority
 to relinquish her interest in LRCI.  Mac Babb testified he had [] Babbs
 proxy in a certain situation, which suggests he was an agent to other matters. 
 Babb testified she was not involved in the original negotiations carried out at
 the auction and indicated she did not hear Watson, Mac Babb, and Meares
 conversing.  Yet, she became an investor despite her lack of involvement. 
 During this initial discussion concerning the purchase of the Campground and
 formation of LRCI, Babb permitted Mac Babb to represent her interests.  From
 this interaction, Respondents reasonably believed Mac Babb had the authority to
 negotiate on behalf of Babb.  Specifically, Meares negotiated with Mac Babb
 concerning Babbs relinquishment of her interest in LRCI in lieu of a one-third
 undivided interest in the real property.  He reasonably relied on Mac Babbs
 assertions in informing closing attorney Martini to deed Babbs interest
 outside the corporation.  Further, Babb ratified Mac Babbs conduct with her
 letter to Martini instructing, [t]he deed should identify me as Grantee for my
 portion of this transaction.  
This Court finds the record demonstrates Babb had full knowledge
 of Mac Babbs actions concerning the relinquishment of her rights in LRCI.   Babb
 ratified Mac Babbs conduct by manifesting her intent to adopt her husbands
 actions and accepting the benefits.  She requested and was deeded an undivided
 one-third interest in Little River Campground.  See Crowley v.
 Harvey & Battey, P.A., 327 S.C. 68, 488 S.E.2d 334 (1997); Anthony
 v. Padmar, Inc., 320 S.C. 424, 465 S.E.2d 737 (Ct. App. 1995).  The record
 clearly demonstrates Babb ratified Mac Babbs actions taken on her behalf and
 their conduct established an agency relationship.
Through her own actions and those of her agent, Mac Babb, this
 Court affirms the circuit judges conclusion that Babb voluntarily and
 intentionally relinquished her right to a one-third interest in LRCI.
Respondents answer and counterclaim included the equitable
 defense of unclean hands.  The doctrine of unclean hands precludes a plaintiff
 from recovering in equity if he acted unfairly in a matter that is the subject
 of the litigation to the prejudice of the defendant.  First Union National
 Bank of South Carolina v. Soden, 333 S.C. 554, 511 S.E.2d 372 (Ct. App. 1998).  Respondents have clearly raised credibility issues concerning Babbs
 claims.  However, this court finds Respondents failed to meet their burden of
 proving Babb acted unfairly in a matter that is the subject of the litigation
 between the parties sufficient to demonstrate unclean hands.  We decline to
 apply the doctrine of unclean hands to the instant dispute.
Conclusion
Respondents counterclaim for a declaratory judgment that Babb was
 not a shareholder of LRCI was determined in the January 4, 2004, circuit court
 order finding it related back to matters originally pleaded and was not barred
 by the statute of limitations.
Respondents proved by a preponderance of the evidence that Babb
 voluntarily and intentionally relinquished her right to a one-third interest in
 the shares of LRCI in return for an undivided one-third interest in the 8.4
 acres known as Little River Campground. Therefore, the order of the circuit
 court is 
AFFIRMED.
ANDERSON, HUFF and KITTREDGE, JJ., concur.

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.
[2] Charles Watson died in 1998 and this litigation has
 proceeded with the Estate of Charles L. Watson in his place.