804 S.E.2d 276

Linda A. GIBSON, formerly known as Linda Ann Avinger,
individually and as Trustee of the Paul William Gibson
Family Trust, and Heritage Seven, LLC, Respondents,

v.

AMERIS BANK, Appellant.

**Appellate Case No. 2014-001487**
**Opinion No. 5488**

Court of Appeals of South Carolina.

Heard February 17, 2016
Filed May 24, 2017
Withdrawn, Substituted, and Refiled August 23, 2017

Robert E. Stepp, Tina Marie Cundari, and Benjamin Rogers Gooding, of Sowell Gray Stepp & Laffitte, LLC, of Columbia, for Appellant.

Desa Ballard and Harvey M. Watson, III, of Ballard & Watson, Attorneys at Law, of West Columbia, for Respondents.

LOCKEMY, C.J.:

A master-in-equity entered judgment in the amount of $2,913,866.00 against Ameris Bank (Ameris) for breach of fiduciary duty, negligent misrepresentation, and aiding and abetting a breach of fiduciary duty claims asserted by Linda Gibson, individually and as trustee of the Paul William Gibson Family Trust (the Trust), and Heritage Seven, LLC (collectively, Respondents). On appeal, Ameris argues the master erred (1) in concluding Ameris owed Respondents a fiduciary duty in a $2.8 million commercial loan transaction for a real estate venture that ultimately failed; (2) in concluding Ameris

was liable for negligent misrepresentation because one of Ameris's future employees told Gibson that the transaction was a "good deal" and that the "rents would cover the debt" and because Ameris structured the loan "to include borrowing the down payment of $700,000" such that the apartments were purchased with "100% borrowed money"; (3) in concluding Ameris aided and abetted Gibson's real estate agent in breaching his fiduciary duty; and (4) in awarding actual damages and excessive punitive damages. We reverse.

## FACTS/PROCEDURAL HISTORY

Ameris commenced this foreclosure action when Respondents failed to repay a $2.8 million loan that Ameris made to Heritage Seven [1] for the purchase and renovation of an apartment complex in North Charleston. Respondents answered the complaint and asserted counterclaims of negligent misrepresentation, breach of fiduciary duty, and aiding and abetting a breach of fiduciary duty. The foreclosure action settled, and Galt Valley, LLC—the entity to which Ameris assigned the loan—accepted deeds to the apartment complex and collateral in lieu of foreclosure. Respondents' counterclaims remained, however, and were tried before a master.

In deciding to purchase the apartment complex, Gibson first consulted her real estate and financial advisor, Rolando Villavicencio. On August 28, 2007, Gibson signed a contract to purchase the apartment complex and sought financing from First Reliance Bank (First Reliance). Gibson previously worked with First Reliance in 2005 when First Reliance financed Heritage Seven's purchase of a $2.4 million shopping center in Moncks Corner. Karl Zerbst was the loan officer and Benji Lanier was the analysist for the 2005 shopping center loan from First Reliance.

After seeking financing from First Reliance for the apartment complex, Villavicencio complained to Zerbst that he and Gibson were not being served at First Reliance and wanted to know who could help them obtain financing. According to Gibson, Zerbst told her that she would be better served at Ameris and that he had given her loan documents to Lanier, who had left First Reliance and had begun working at Ameris

---

1. Gibson personally owned a 50% interest in Heritage Seven, and the Trust owned the remaining 50% interest. Gibson guaranteed the loan in her individual capacity and as trustee of the Trust.

on October 11, 2007. Gibson decided to seek financing from Ameris. Her understanding was that Lanier would handle the loan at Ameris and Zerbst would ultimately handle the transaction for her. However, Zerbst testified he never told Gibson or Villavicencio that he was going to work for Ameris.

Zerbst ended his employment with First Reliance on October 5, 2007. Although Zerbst spoke with other banks, including Ameris, regarding potential employment, he remained unemployed from October 5, 2007, until January 11, 2008, when he accepted a written employment offer from Ameris. Zerbst testified he did not work for Ameris and did nothing on Ameris's behalf before January 11, 2008. Marc Bogan, an executive at Ameris, testified Ameris did not encourage Zerbst to refer customers to it or authorize Zerbst to do anything on its behalf before hiring Zerbst in January 2008. Bogan stated no one at Ameris had the ability or right to control Zerbst's conduct before Zerbst formally accepted the employment offer on January 11, 2008. Further, Richard Sturm, the President of Ameris, testified Ameris never told Gibson that Zerbst was acting on Ameris's behalf prior to January 2008.

In mid-October 2007, Gibson spoke with Zerbst about the apartment complex transaction. At that time, Gibson believed Zerbst had left First Reliance but had not yet joined Ameris. Gibson testified she and Zerbst discussed "the wisdom" of her closing the apartment transaction, the appraisal, the location, and the rents she would charge. According to Gibson, Zerbst thought the apartment complex was a "good investment," and Zerbst assured her that the rents would cover the debt.

On November 2, 2007, Respondents and Ameris closed the apartment complex loan. Gibson underwent surgery soon after the loan closing. While Gibson was recuperating, Ameris disbursed funds to Villavicencio when he submitted invoices for work performed in the renovation of the apartment complex. Gibson testified that while she was unable to visit the apartment complex because of her health problems, Villavicencio assured her that "everything was fine, on schedule, on budget." On February 7, 2008, Villavicencio sent an email to Lanier, stating that the project was "moving along as planned" and that he expected the units to be completed and ready for leasing by the next month. When Gibson visited the apartments in March 2008 after recovering from her surgery,

however, she discovered Villavicencio and the contractor were not on speaking terms, Villavicencio had lied to her about the status of the project, and all three apartment buildings were being renovated at once, instead of one at a time as originally planned. In May 2008, Gibson fired Villavicencio because she believed he had mismanaged her properties and stolen several hundred thousand dollars from her while managing her shopping center and apartment complex. After firing Villavicencio, Gibson managed the apartment complex herself. Gibson also took control of the loan proceeds and arranged for Ameris to place the disbursements in her checking account without receiving invoices.

After Gibson began renting the units, several tenants lost their jobs and were unable to pay rent. Gibson allowed many of the tenants to remain in the apartments and pay a lower rate. Gibson testified the rental income from the apartment complex was insufficient to cover the interest payments on the loan, so she had to use funds from her savings account to pay the remaining interest.

The master determined the relationship between Zerbst and Gibson was more than a creditor and debtor relationship. The master found Zerbst accepted Gibson's trust, Zerbst advised Gibson about the apartment complex transaction, Zerbst was Ameris's agent when Respondents purchased the apartment complex, and Zerbst and Ameris breached their fiduciary duties to Respondents. The master also found Appellant liable for breach of fiduciary duty, negligent misrepresentation, and aiding and abetting Villavicencio's breach of fiduciary duty. The master awarded Respondents actual damages of $1,153,625.00 and punitive damages of $3,551,232.00, for a total damages award of $4,704,857.00. The master found Respondents comparatively at fault for 20% of their damages and reduced the total award of actual and punitive damages by 20%. The master then applied an $850,000.00 set-off to the reduced total award for the money received in the settlement of the case Respondents had filed against Villavicencio and others for the same injury. The final judgment was $2,913,886.00.

**STANDARD OF REVIEW**

"An action in tort for damages is an action at law." *Longshore v. Saber Sec. Servs., Inc.*, 365 S.C. 554, 560, 619

S.E.2d 5, 9 (Ct. App. 2005). "Our scope of review for a case heard by a Master-in-Equity who enters a final judgment is the same as that for review of a case heard by a circuit court without a jury." *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989). "In an action at law tried without a jury, an appellate court's scope of review extends merely to the correction of errors of law." *Temple v. Tec-Fab, Inc.*, 381 S.C. 597, 599-600, 675 S.E.2d 414, 415 (2009). "[Q]uestions of law may be decided with no particular deference to the trial court. . . ." *U.S. Bank Trust Nat. Ass'n v. Bell*, 385 S.C. 364, 373, 684 S.E.2d 199, 204 (Ct. App. 2009). "In an action at law, '[this court] will affirm the master's factual findings if there is any evidence in the record which reasonably supports them.' " *Query v. Burgess*, 371 S.C. 407, 410, 639 S.E.2d 455, 456 (Ct. App. 2006) (quoting *Lowcountry Open Land Trust v. State*, 347 S.C. 96, 101-02, 552 S.E.2d 778, 781 (Ct. App. 2001)).

## LAW/ANALYSIS

### A. Breach of Fiduciary Duty and Negligent Misrepresentation

■ Before the master and again before this court, Ameris maintained that Zerbst was not its agent in October 2007 and Ameris cannot, therefore, be held liable for any damages resulting from Zerbst's conduct.[2] We agree.

■ "Generally, agency is a question of fact." *R & G Const., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 434, 540 S.E.2d 113, 118 (Ct. App. 2000). "In an action at law,

---

2. Respondents asserted during oral argument that there were no factual issues presented to this court for our review. We disagree. We find Ameris adequately raised the issue of whether Zerbst was Ameris's agent such that it can be reviewed on appeal. *See* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal."); Jean Hoefer Toal, et al., *Appellate Practice in South Carolina* 75 (2d ed. 2002) (noting our courts have broadly construed the requirements that parties specifically state their issues on appeal where it is "reasonably clear from appellant's arguments" that the issue is in dispute); *Eubank v. Eubank*, 347 S.C. 367, 373 n.2, 555 S.E.2d 413, 416 n.2 (Ct. App. 2001) (noting wife contended husband had not sufficiently raised an issue as required by Rule 208 (b)(1)(B), SCACR, but considering the issue because a statement within the brief "when read in conjunction with [h]usband's

'[this court] will affirm the master's factual findings if there is any evidence in the record which reasonably supports them.'" *Query*, 371 S.C. at 410, 639 S.E.2d at 456 (quoting *Lowcountry Open Land Trust*, 347 S.C. at 101-02, 552 S.E.2d at 781). "The test to determine agency is whether or not the purported principal has the *right to control* the conduct of his alleged agent." *Fernander v. Thigpen*, 278 S.C. 140, 144, 293 S.E.2d 424, 426 (1982). "[A]n agency may not be established solely by the declarations and conduct of an alleged agent." *Frasier v. Palmetto Homes of Florence, Inc.*, 323 S.C. 240, 245, 473 S.E.2d 865, 868 (Ct. App. 1996)).

We find no evidence to support the master's finding that Zerbst was Ameris's agent prior to January 11, 2008. Specifically, we find there was no evidence presented that Zerbst was employed by Ameris before he accepted Ameris's written offer on January 11, 2008, or that Ameris had a right to control Zerbst's conduct in October 2007. Additionally, there is no evidence in the record that Ameris ever represented to Respondents that Zerbst was its agent. *See id.* at 244-45, 473 S.E.2d at 868 ("Apparent authority to do an act is created as to a third person by written or spoken words *or any other conduct of the principal* which, reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him."); *id.* at 245, 473 S.E.2d at 868 ("Either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such belief.").

---

argument, adequately raised the issue"); *Southern Welding Works, Inc. v. K & S Const. Co.*, 286 S.C. 158, 160, 332 S.E.2d 102, 104 (Ct. App. 1985) (finding a party failed to comply with the supreme court rules requiring exceptions to "contain a complete assignment of error," but considering the issues because they "are reasonably clear from K & S's argument and . . . were ruled on by the trial court").

Here, Ameris's statement of issue on appeal questions, "Did the master-in-equity err in concluding that the bank owed the borrower (a limited liability company) a fiduciary duty in a $2.8 million dollar commercial loan transaction for a real estate venture that ultimately failed?" Additionally, Ameris argued several times in its brief and at oral argument that "Zerbst was not employed by Ameris Bank or any bank" at the time he made representations to Gibson regarding the wisdom of the transaction. While the word "agency" was not included in Ameris's statement of issues on appeal, it is reasonably clear from the brief that Ameris challenged the master's findings that Zerbst was Ameris's agent.

In response to questioning by Respondents' attorney, Zerbst testified he kept a calendar in 2007. Zerbst explained the calendar was produced in litigation with First Reliance in which First Reliance alleged he violated his covenant not to compete by going to work for Ameris. First Reliance, Ameris, and Zerbst ultimately settled that case. Ameris could not produce that calendar after Gibson requested it in discovery.

The master found,

> The parties' filings in the litigation between First Reliance and [Zerbst] and Ameris state that Ameris was in possession of [Zerbst's] 2007 day planner, which presumably would have shown exactly when [Zerbst] and Ameris met to discuss Zerbst['s] employment. However, Ameris has failed to produce the 2007 calendar, claiming it has been lost." ... Based on the other evidence presented, it is likely that the 2007 calendar would contain further evidence that [Zerbst] was acting as Ameris'[s] agent before he was formally employed by Ameris.

We find Zerbst's lost calendar could not have contained evidence that Zerbst was Ameris's agent. The fact that the calendar might have shown that Zerbst discussed employment with Ameris before accepting its written employment offer on January 11, 2008, is of no consequence because Zerbst admitted he discussed employment with Ameris before January 2008. More importantly, however, the calendar would not have contained any representations by Ameris that Zerbst was acting as its agent. *See id.* at 244-45, 473 S.E.2d at 868 ("Apparent authority to do an act is created as to a third person by written or spoken words *or any other conduct of the principal* which, reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him.")

Accordingly, we hold Zerbst was not Ameris's agent in October 2007 and reverse the master's decision finding Ameris liable for breach of fiduciary duty and negligent misrepresentation.

### B. Aiding and Abetting a Breach of Fiduciary Duty

▇▇▇▇ Ameris argues the master erred in finding it aided and abetted Villavicencio in breaching his fiduciary duty to

Respondents. Ameris asserts there was no evidence that it knew about, or knowingly participated in, Villavicencio's breach. We agree. "The elements for the cause of action of aiding and abetting a breach of fiduciary duty are[ ] (1) a breach of a fiduciary duty owed to the plaintiff[,] (2) the defendant's knowing participation in the breach[,] and (3) damages." *Vortex Sports & Entm't, Inc. v. Ware*, 378 S.C. 197, 204, 662 S.E.2d 444, 448 (Ct. App. 2008). "The gravamen of the claim is the defendant's knowing participation in the fiduciary's breach." *Future Group, II v. Nationsbank*, 324 S.C. 89, 99, 478 S.E.2d 45, 50 (1996). To prove this cause of action, the plaintiff must present evidence that the defendant had actual knowledge of the third party's breach of fiduciary duty. *See id.* (reversing the trial court's verdict in favor of the plaintiff on the plaintiff's claim for aiding and abetting a breach of fiduciary duty where there was no evidence that the defendant bank had actual knowledge of the third party's breach of fiduciary duty).

We hold the master erred in finding Ameris aided and abetted Villavicencio's breach of fiduciary duty because there was no evidence that Ameris had actual knowledge of Villavicencio's breach when it disbursed loan proceeds to him. The record on appeal contains no evidence that, while Villavicencio was involved with the apartment project from November 2007 until May 2008, Ameris's employees had actual knowledge that Villavicencio was breaching his fiduciary duty to Respondents. Zerbst testified Gibson authorized Villavicencio to receive loan disbursements. Further Zerbst stated Gibson never told him, or anyone at Ameris, not to disburse money according to Villavicencio's instructions during the construction phase

The record on appeal shows Zerbst was the first Ameris employee to express concerns about Ameris's administration of the loan disbursements. Zerbst testified he worked in Ameris's Murrell's Inlet office when Ameris first hired him in January 2008 and he was not involved with making advancements on Respondents' loan while he worked in Murrell's Inlet. Zerbst testified he did not learn about the disbursements on Respondents' loan until October 2008—five months after Gibson fired Villavicencio in May 2008. Zerbst communicated his concerns to Don Snipes, a regional credit officer at Ameris, in May 2009. On July 3, 2009—more than a year after

Gibson fired Villavicencio—Snipes emailed another Ameris employee and expressed concerns that Ameris had mismanaged the loan and had potentially aided Villavicencio in siphoning off some of the loan proceeds. Because the evidence does not show that Ameris had actual knowledge of Villavicencio's breach of fiduciary duty while Villavicencio was committing his breach, we hold the master erred in finding Ameris knowingly participated in Villavicencio's breach.

## C. Damages

Ameris argues the master erred in awarding actual and punitive damages and in calculating the damages award. Because we reverse the master's finding of liability as to all three causes of action, there is no basis for awarding actual or punitive damages. Accordingly, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when the disposition of a prior issue is dispositive).

## CONCLUSION

For the foregoing reasons, the decision of the master is **REVERSED.**

HUFF, J., concurs.

KONDUROS, J., concurs in result only.